DAVID E. COSTA *vs.* CARS, INC.

JUNE 20, 1963.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Joslin, JJ.

Joslin, J. This is an employee's original petition for compensation under the provisions of the workmen's compensation act. The case is before us on the respondent's appeal from a decree of the full commission affirming the decree of the trial commissioner.

The trial commissioner entered a decree finding, inter alia, that petitioner on April 23, 1959 sustained a neck sprain and low back strain while using a long wrench in the performance of his usual work as an automobile repairman in the employ of respondent; that on account of such injuries petitioner was totally incapacitated during three periods, namely April 24 to June 5, 1959, August 9 to September 1, 1959, and April 17 to June 16, 1961, which periods will hereinafter be referred to as the first, second and third periods respectively; and that he was not incapacitated to do his regular work other than during the above-stated periods.

The respondent contends in substance that the commission's findings that petitioner suffered a low back injury on April 23, 1959 and that he was totally incapacitated subsequent to May 19, 1959, are not supported by any legal evidence and are contrary to law. To the extent that respondent has not briefed and argued all of its reasons of appeal, they are deemed to be waived.

The applicable rules to be followed by us in cases of this sort have long been well established. The petitioner has the burden of proof to establish his case by credible evi-

dence of probative force. *Spolidoro* v. *United States Rubber Co.*, 72 R. I. 269; *Baccari* v. *W. T. Grant Co.*, 73 R. I. 376. On review we do not weigh the evidence or pass on questions of the credibility of witnesses, but are confined to whether there is any legal evidence direct or by way of reasonable inference to support the commission's findings of fact which in the absence of fraud are conclusive upon us. *Brown & Sharpe Mfg. Co.* v. *Campo*, 83 R. I. 86.

The respondent's first contention is that the finding of the commission that petitioner sustained a low back strain is not supported by legal or credible evidence of probative force.

The petitioner testified that he immediately reported the accident to his superior and complained that his whole body bothered him. He was examined by a doctor on the day of the accident and shortly thereafter consulted Dr. Armand A. Bertini under whose care he remained until June 5, 1959. From April 25 to May 2 he was a patient at Pawtucket Memorial Hospital. While so hospitalized he was in traction and his testimony is that his neck and the lower right portion of his back gave him the most trouble, the latter because of the traction. He also testified that he complained to Dr. Bertini that he was bothered by his back. He was readmitted to Pawtucket Memorial Hospital in August 1959 and he testified that while there he "complained constantly" about his back.

Doctor Joseph E. Pine, a chiropractor who had treated him in 1954 for low back trouble, was again consulted by petitioner in October 1959. A case history of low back pain commencing with the date of his April accident and continuing to the time of the October examination was given to Dr. Pine. He treated petitioner until March 1960 for a myofascial low back strain.

The petitioner became a patient of Dr. Caroll M. Silver in April 1961. He told the doctor that he had been injured

about three years previously while working for respondent, that he had treated with Dr. Pine who had given him physiotherapy treatments, and that he had been wearing a back brace. He was hospitalized by Dr. Silver at Miriam Hospital where a myelogram was done and a diagnosis was made that petitioner had a lumbosacral strain with right sciatic neuritis.

A careful examination of petitioner's testimony reveals other complaints by him to the effect that he was bothered by a low back injury during the relevant periods.

The respondent argues that the only evidence as to the low back strain is petitioner's testimony which stands alone uncorroborated in any manner by the Pawtucket Memorial Hospital records, the report of Dr. Herbert E. Harris, or the testimony of Dr. Bertini, Dr. Hannibal Hamlin who examined him during his first stay at Pawtucket Memorial Hospital, or Dr. Ernest D. Thompson who treated him in July 1959 for chest injuries sustained in an automobile accident in June 1959. Based on the foregoing, it asks us to conclude that petitioner's testimony as to low back strain is so inherently improbable as to prevent its being considered legal or credible evidence of probative force. With this contention we cannot agree.

There was some evidence as to a low back strain which even though uncorroborated could satisfy a rational mind and as such it constituted legal evidence. *Jillson* v. *Ross,* 38 R. I. 145. That petitioner alone gave such testimony does not render it inherently improbable. What respondent in effect is asking us to do is to find either that petitioner is not worthy of belief or that the preponderance of the evidence is not supportive of a finding by the commission of a low back strain. This under our decisions we cannot do for in workmen's compensation cases we do not weigh the evidence or pass on the credibility of witnesses.

The respondent also contends that the case histories of

a prior back injury given by petitioner to Drs. Pine and Silver are not evidence upon which a legal finding could be made by the commission that petitioner sustained a low back strain on April 23, 1959. If the testimony of such doctors was all that was before the commission respondent's contention might have merit. In urging such contention, however, it disregards the testimony of petitioner that he hurt his back while in its employ and that he complained of a back injury at that time and many times thereafter prior to his examination by Drs. Pine and Silver. It disregards also petitioner's denial of and the lack of evidence as to an intervening back injury. In such circumstances the testimony of Drs. Pine and Silver, while not evidence that petitioner suffered a low back strain on April 23, 1959, is legal evidence upon which the commission could find that petitioner suffered from a low back strain at the times he consulted such physicians and that the strain arose out of the injury suffered by him on April 23, 1959.

This conclusion finds support in the case of *Natalizia* v. *Atlantic Tubing & Rubber Co.*, 81 R. I. 515, where objection was made to a physician's testimony concerning the history of an injury and the complaints which he received from the patient before examining him. The medical diagnosis there made was based on objective tests and the patient's subjective symptoms. In holding such testimony competent the court at page 520 said: "The sole purpose of such testimony was to show what those symptoms were and not what caused them. Testimony of that nature is 'generally and properly considered receivable.'" See 3 Wigmore, Evidence (3d ed.) §688 (1)-(3), p. 4.

It is our opinion, therefore, that the finding of the commission that petitioner sustained a low back strain is supported by some credible and legal evidence of probative force.

We come now to a consideration of respondent's contention that there is no legal evidence to support the commis-

sion's findings as to the three periods of total incapacity. The respondent has conceded that petitioner was totally incapacitated through May 19, 1959 so that we need only concern ourselves with his incapacity subsequent to that date and reference to the first period will be to the portion thereof subsequent to that date.

The petitioner returned to work for respondent some time in either May or June 1959. Neither the evidence nor the decision of the trial commissioner is clear as to when such reemployment took place. In view of our decision, however, the exact date of his return to work need not be decided and we will assume without deciding that he commenced work on May 20, 1959.

The circumstances attendant upon such resumption of employment are as follows: On May 14, 1959 Dr. Bertini who felt "pretty sure" petitioner could perform his work suggested to him that he return to work and he agreed "to try it." Thereafter petitioner returned to work as a mechanic and after a day and a half was discharged. The petitioner testified that during this short period of employment he had "a lot of difficulty getting over the hood of cars"; that he was "not up to par"; and that "I couldn't do the work I had been doing." The petitioner did not again work during the first period.

Our examination of the transcript also discloses testimony, either direct or by way of medical histories, that petitioner wore a back belt and a neck collar during portions of the first period; that he felt good "for only four or five days" after his discharge from the hospital on May 2, 1959; that he had considerable trouble with his neck during the week preceding June 5, 1959; that on June 2, 1959 it was Dr. Harris' opinion that he had fully recovered; and that Dr. Bertini pronounced him able to work as of June 5, 1959.

The respondent's contention, as we understand it, is that the voluntary resumption of gainful employment by peti-

tioner for a day and a half, ipso facto, constituted a termination of his total incapacity. This contention states the question too simply. It ignores the direct evidence and reasonable inferences therefrom that petitioner resumed gainful employment on a trial basis in response to his doctor's recommendation and in a good-faith attempt to ascertain the extent of his recovery. It disregards also the difficulties encountered by petitioner in performing the light work assigned to him and his testimony as to the reasons for his discharge and as to his condition thereafter.

In *Providence Window Cleaning Co.* v. *Robidoux*, 83 R. I. 24, an injured employee acting in reasonable good faith returned to light work on a trial basis and four or five weeks later finding that he was unable to do the work quit his job. The employer argued that since the employee was able to work at some remunerative occupation he was entitled to an award for partial compensation only. In upholding the decision of the trial justice who found that the employee had been totally incapacitated for an extended period of time inclusive of the four or five weeks of trial work, this court said: "This contention [employer's] in effect asks us to pass upon the weight of the evidence and the credibility of the witnesses, which we have repeatedly held we may not do in this class of cases." We find nothing which distinguishes the instant case from *Providence Window Cleaning Co.* v. *Robidoux, supra,* and which would warrant our disturbing the commission's finding of petitioner's total incapacity during the first period.

The respondent disputes both petitioner's total incapacity during the second period and the relation of such incapacity, if any, to the accident of April 23, 1959. We are satisfied, however, that there is legal evidence to support the commission's finding that petitioner was totally incapacitated during the second period and that such incapacity arose out of the accident of April 23, 1959.

The respondent points out that the commission's finding that such period commenced on August 9 is not supported by the records of Pawtucket Memorial Hospital covering petitioner's second period of hospitalization. The respondent ignores, however, petitioner's testimony that the date of such readmission was August 9. The legal evidence as to petitioner's total incapacity during the second period in summary is his hospitalization until August 15, on which date he discharged himself "against advice" because, as he stated, he "tried to get the people in the hospital to do something about my back" and "They wouldn't do it." Between August 15 and September 1 petitioner testified that he did not work because of the injuries to "My back and my neck and shoulder." He denied that his inability to work during such period was occasioned by the injuries to his chest sustained in the automobile accident of June 1959, and as we have already indicated, there is no evidence of any injury to petitioner's neck or back intervening between April 23 and September 1, 1959.

The third period commenced on the day petitioner was hospitalized by Dr. Silver and respondent concedes that petitioner was at such time totally incapacitated. We have already disposed of its contention that the incapacitating condition did not arise out of the accident of April 23, 1959.

On May 25 Dr. Silver was of the opinion that petitioner was able to perform light work and respondent contends that May 25 should be the terminal date of his total incapacity and that there is no evidence to support a finding of total incapacity from May 25 to June 16, 1961. The petitioner, however, continued to complain that he had been feeling "Not good at all," and that he had "a lot of stiffness, numbness in my right leg and pain." In early September 1961 he found that he could not do the work of a truck driver, even though on June 16 Dr. Silver had apparently given his approval to such type of employment. While

such legal evidence as to any total incapacity between May 25 and June 16 is slight, we cannot say that it is totally lacking.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*Charles H. Anderson,* for petitioner.

*Worrell and Hodge, Eldridge H. Henning, Jr.,* for respondent.