DORA WILLIAMS *vs.* UNITED WIRE & SUPPLY CORPORATION.

OCTOBER 30, 1963.

PRESENT: Condon, C.J., Roberts, Powers and Joslin, JJ.

488

 

JOSLIN, J. This is a petition brought under the workmen's compensation act for dependency benefits alleged to be due the petitioner on account of the death of her husband, Wilson Stephen Williams, hereinafter referred to as "decedent." After a hearing before the trial commissioner a decree was entered denying and dismissing the petition. The cause is before us on the petitioner's appeal from the decree of the full commission affirming the decree of the trial commissioner.

The evidence is undisputed. It shows that on the date of his death decedent went to work at approximately 4 p.m. and died at about 7:10 p.m. Much of the interval between such arrival and his decease he spent in rest rooms or away from his job because he was not feeling well.

Medical testimony as to decedent's prior heart condition and cause of death came from Dr. Joseph A. Palumbo, a general practitioner and the medical examiner who was called by the police to examine decedent prior to the removal of his body; Dr. Edmund B. Curran, a surgeon; and Dr. John A. Dillon, an internist and cardiologist.

Doctor Palumbo testified that when he arrived at respondent's place of business petitioner's husband was dead. He performed no autopsy, but did make a full examination

at the state morgue. His diagnosis of the probable cause was "acute coronary insufficiency," which is a chronic disease caused by a gradual accumulation of thickening material in the small blood vessels. In his opinion it has never been established that work, no matter how heavy, can contribute to an underlying coronary disease. It was his further opinion that once such condition of insufficiency or underlying cause exists, "extreme exertion" or an "extreme added work load" or something "above and beyond the line of duty" can "precipitate a heart attack and death."

It was Dr. Curran's testimony that his interpretation of an electrocardiograph taken on April 5, 1961 made decedent a "vulnerable person," whose death could have been caused by overwork. He did not, however, testify that decedent had told him that he was "overworked," only "that he was working hard." In relating the death of decedent to his employment, the doctor stated that overworking for decedent's "particular set of coronaries" would have been necessary.

Doctor Dillon was called as a witness by respondent. In answer to hypothetical questions he stated that in his opinion decedent "died of chronic slowly progressive disease, and his death was not brought about any sooner or his disease was not aggravated by his occupation." He further testified over objection that absent any "intensive abnormal extensive and unusual sudden aggravating strain in his work" death resulted from the disease and not from any "significant outside aggravation."

It further appears that prior to testifying Dr. Dillon had examined certain records in the possession of respondent's insurer and not in evidence. He stated that although the hypothetical questions contained basically the same facts as were in the examined records he could not separate the two and that his opinion was subconsciously colored by his study of the records. The petitioner objected to the questions, took exception to the rulings allowing them to be

answered, but made no motions to strike. The petitioner now pursues her exceptions as reasons of appeal.

Whether reversible error inheres in allowing the hypothetical questions need not concern us since the commission's decision can rest solely on the testimony of Drs. Curran and Palumbo. Indeed, the trial commissioner in his decision stated "that there is no apparent conflict between the opinions [medical] of either the petitioner's or respondent's witnesses."

The relevant evidence called to our attention as to the work done by decedent and the exertion involved therein can be briefly summarized. Decedent had been employed by respondent for 15 or 16 years prior to his death. Until 1959 his duties were those of a "pointer"; thereafter, in part as a saw operator and, when not so engaged, as a "floater" doing odd jobs. His duties as a saw operator were more strenuous than those as either a pointer or floater.

During the year next prior to his death decedent operated a saw 132 $\frac{1}{2}$ days and worked 89 $\frac{1}{2}$ days doing lighter work; on one occasion which apparently was three or four months prior to his death he told petitioner that he was "like being over worked"; during the two-week period prior to his death he worked as a saw operator on not more than two occasions, one of which was on the night preceding it.

Based on the foregoing evidence, the commission found that there was no compensable injury. The issue for determination by us is whether there is any legally competent evidence, direct or circumstantial or by reasonable inference, supportive of the commission's finding of fact that "the petitioner has failed to prove by a fair preponderance of the reasonable evidence that her husband, Wilson S. Williams' death was in any way causally connected with, precipitated by or brought on by his employment with the respondent." *Chase* v. *General Electric Co.*, 83 R. I. 269. If such finding is supported by any legal evidence, irrespective of whether on the same evidence we would make the

same finding, the decree must be affirmed for by statute we are precluded from weighing the evidence. *Kestenman Bros. Mfg. Co.* v. *Greene,* 81 R. I. 291; *Costa* v. *Cars, Inc.,* 96 R. I. 396, 192 A.2d 1.

The decree of the commission in this case was entered prior to *Gartner* v. *Jackson's, Inc.,* 95 R. I. 489, 188 A.2d 85. In that case we said: "In our opinion the important factor in heart attack cases is not whether the nature of the work performed by an employee involves usual or unusual physical exertion, but rather whether such work, whatever its nature, caused or precipitated the heart attack. The true test is whether there is a causal connection between the employee's work and the heart attack." That is still the test.

It is petitioner's contention that the commission misconceived the law by imposing the burden on her to show undue physical exertion in order to establish causation between decedent's employment and his death. She refers to a portion of the decision wherein the commission quoting the trial commissioner said there was nothing "that could conceivably be called unusual or heavy exertion that was performed" by decedent. She also calls to our attention excerpts from the commission's decision wherein it states that compensation benefits following a "heart attack" have been awarded in this State only where "unusual circumstances" were present; and that "the supreme court of Rhode Island has never, to our knowledge, granted compensation benefits in a heart attack case unless the heart attack was accompanied by some unusual circumstance or over-exertion." The petitioner takes such isolated phrases out of context and fails to note that the commission also said that all of the "heart attack" cases in this State had been decided prior to 1949 when the act was amended by deleting the italicized words from the phrase "personal injury sustained *by accident* by an employee arising out of and in the course of his employment * * *." The commis-

sion then noted that as a result of such amendment it could be argued that a more liberal construction should be applied to "heart attack" cases and referred to *Dwyer* v. *Ford Motor Co.*, 36 N. J. 487, 507, where, inter alia, the court held that the basic applicable controlling principle was to impose on the person seeking benefits the obligation of establishing "that the heart attack was caused or contributed to in a material way by the employment exertion."

The commission found that petitioner had failed to establish that the work performed by decedent for respondent "either caused, or contributed to, or aggravated, or accelerated, the decedent's fatal heart attack." Such statement is in accord with the *Gartner* test.

There is medical testimony of probative force which in substance is that a heart attack cannot be precipitated in one suffering from a coronary insufficiency absent "extreme exertion" or an "extreme added work load" or something "above and beyond the line of duty." There is also legal evidence that decedent's usual work for respondent had not been increased during the year prior to his death and that he had not performed in the course of his employment extremely heavy work or work not customarily and usually performed by him during such period.

Such evidence supports the negative conclusion of the commission that there was a lack of the type of causal connection between decedent's death and his employment, which under *Gartner* the petitioner was required to prove by a fair preponderance of the legal evidence in order to establish that his death was compensable. The *Gartner* test is one of causation. We did not presume there to decide which heart attacks are caused by what kind of employment and which are not. What we did decide was that the ultimate test in heart attack cases is one of causation and not one of the type of work being performed by the employee. There being some competent evidence or reason-

able inferences therefrom to support the finding of the commission, its decision cannot be disturbed by us.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

*John Quattrocchi, Jr.,* for petitioner.

*Worrell and Hodge, Eldridge H. Henning, Jr.,* for respondent.