Argued and submitted on April 15, reversed and remanded June 18, 2014

In the Matter of the Compensation of
Marcelino Camacho, Claimant.

Marcelino CAMACHO,
*Petitioner,*

*v.*

SAIF CORPORATION
and Pronto Staffing Services,
*Respondents.*

Workers' Compensation Board
1101741; A152079

330 P3d 1242

Julene M. Quinn arued the cause for petitioner. With her on the briefs was Kryger Alexander Carlson PC.

Holly C. O'Dell argued the cause and filed the brief for respondents.

Before DeVore, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

LAGESEN, J.

## LAGESEN, J.

Claimant seeks judicial review of an order of the Workers' Compensation Board (board); the order affirmed an administrative law judge's (ALJ) order upholding SAIF Corporation's denial of his injury claim for low-back and thoracic strains incurred while moving loaded pallets using a manual pallet jack.[1] The board concluded that claimant had not demonstrated that his low-back and thoracic strains were a "compensable injury" under ORS 656.005(7).[2] In reaching that conclusion, the board did not afford statements made by claimant to his medical providers for the purpose of diagnosis and treatment the weight required by ORS 656.310(2).[3] In addition, the board discredited claimant's statements about the cause of his injury on the ground that they were inconsistent, without considering evidence in the record—a statement by claimant describing the injury that was admitted into evidence but not translated from Spanish to English—that may have tended to prove or disprove the apparent inconsistency. Because of the board's misapplication of ORS 656.310(2), because we cannot determine

---

[1] A manual pallet jack is a manual forklift device whereby the operator lifts pallets by grasping the handle of the jack, typically with both hands and with arms outstretched, and pumping it up and down.

[2] ORS 656.005(7)(a) provides, in pertinent part:

"A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means, if it is established by medical evidence supported by objective findings, subject to the following limitations:

"(A) No injury or disease is compensable as a consequence of a compensable injury unless the compensable injury is the major contributing cause of the consequential condition."

[3] ORS 656.310(2) provides:

"The contents of medical, surgical and hospital reports presented by claimants for compensation shall constitute prima facie evidence as to the matter contained therein; so, also, shall such reports presented by the insurer or self-insured employer, provided that the doctor rendering medical and surgical reports consents to submit to cross-examination. This subsection shall also apply to medical or surgical reports from any treating or examining doctor who is not a resident of Oregon, provided that the claimant, self-insured employer or the insurer shall have a reasonable time, but no less than 30 days after receipt of notice that the report will be offered in evidence at a hearing, to cross-examine such doctor by deposition or by written interrogatories to be settled by the Administrative Law Judge."

whether the board's finding is supported by substantial evidence in the light of claimant's untranslated statement, and because the board did not have the discretion to disregard otherwise probative evidence that had been admitted into the record simply because it was in Spanish, we reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

In early 2011, while employed at Pronto Staffing Services, SAIF's insured, claimant sought chiropractic treatment at the Woodstock Chiropractic Clinic for mid- and low-back pain. According to his medical records, claimant reported to Dr. Steinke that he had immediately felt pain when, 11 days earlier, while working, he

> "was unloading pallets off a manual forklift and putting them on a trailer. The pallets weigh approximately 70-80 lbs. While *lifting* the 3rd pallet w/both hands in front of him, he felt low back [pain] & felt a 'pop.'"

(Emphasis added.) At the same time, Steinke and claimant completed the Workers' Compensation Division Form 827, "Worker's and Physicians Report for Workers' Compensation Claims." On that form, claimant reported that he had been working for "Bob's Metals" when he experienced the injury. The section of the form directing claimant to "[d]escribe accident" contains a handwritten statement in Spanish. Claimant signed that section of the form, thereby certifying that the information that he was providing was true to the best of his knowledge.

Claimant's treating doctors at Woodstock Chiropractic recommended full medical release from work due to the injury from February 15 to March 1, then modified work duties from March 2 to March 16 and, finally, a full return to work on March 17. Thereafter, claimant began seeing Dr. Heitsch on March 24, 2011. Heitsch's medical records reflect that claimant reported that he was injured while he

> "was unloading a semi box trailer using a pallet jack to move pallet loads of boxes 2/4/11. As he neared completion of the task he *pulled* on the jack and experienced a pop in

his left lumbar area with associated sharp non-radiating pain."

(Emphasis added.)

Claimant and Heitsch also completed a Form 827 together. The section directing claimant to describe the accident contains a typewritten statement in English. It states:

"I was asked to unload a big shipment from a truck trailer with a pallet jack. The load I had to pull was about 50 lbs. When I *puling* [*sic*] pallet jack backwards I heard a pop in my lower back."

(Emphasis added.) Claimant signed the statement, certifying that it was true.

Heitsch first recommended full medical release from work on March 24, but then approved a job offer from Pronto with modified work duties on April 6. Claimant continued to be treated for his injury until at least April 20, although the final report in the record shows an appointment scheduled with Heitsch for May 4, 2011.

In connection with the injury, claimant submitted a claim to SAIF. SAIF denied the claim on the ground that claimant's "lumbar strain and thoracic strain is not compensably related to [claimant's] employment." Claimant— through counsel—requested a hearing. In the hearing request, claimant indicated that a Spanish interpreter would be needed, and the board contracted for interpreter services.

Claimant did not appear in person at the hearing; his lawyer presented claimant's case through claimant's medical records, the two 827 forms, and a "concurrence letter" from Dr. Thompson, one of the doctors who had treated claimant at Woodstock Chiropractic. In the letter, Thompson indicated whether he agreed or disagreed with certain statements made by claimant's lawyer. Among other things, Thompson indicated that he agreed that claimant's history reflected that, when claimant first sought treatment with Steinke at Woodstock Chiropractic, claimant

"reported he was unloading pallets off a manual forklift, like a pallet jack, and putting them on a trailer. By his estimation, the pallets weighed approximately 70 to 80 pounds,

and while he was lifting what he believed was the third pallet with both hands in front of him, he felt pain in his low back and a pop."

Thompson also "indicated that he had a good understanding of the mechanism of injury in this case," and that "a pallet is a somewhat awkward object to lift and if a person extends their hands forward, as in this case, and lifts that pallet upwards, it puts a lot of strain in the middle and lower part of the back." Thompson further stated that he agreed that it was his

"opinion to a reasonable degree of medical probability that [claimant] did sustain a thoracic sprain/strain; lumbar sprain/strain and sacroiliac sprain bilaterally as a direct result of his work activities on February [4], 2011, when he was unloading pallets off a pallet jack and lifting those pallets from a front position with his hands extended, putting increased strain on the mid-back and low back areas and causing the injuries[,]"

and that claimant's work activities were the major contributing cause of his injury.

Following the hearing, the ALJ issued an Opinion and Order upholding SAIF's denial of the claim. The ALJ concluded that claimant's statements in the medical reports were not sufficient to prove that his need for treatment resulted from his work injury.

Claimant sought review of the ALJ's order before the board. The board affirmed the ALJ's order. The board concluded that claimant's statements regarding the circumstances of his injury were not statements to which the board was required to afford *prima facie* weight under ORS 656.310(2) but, instead, were hearsay statements that the board was free to give whatever weight it deemed appropriate under the circumstances of the case. The board then concluded that claimant's statements in the medical reports were insufficient to prove causation—that is, that he had suffered a work injury that was the major cause of his need for medical treatment. The board found that claimant's statements did not demonstrate that his need for treatment resulted from a work injury because, in the board's view, claimant gave inconsistent statements regarding the alleged

work injury. Specifically, the board observed that some of claimant's statements referred to *lifting* a 70-80 pound pallet with both arms in front of him, whereas other statements referred to *pulling* on a pallet jack loaded with a 50-pound pallet. The board concluded:

> "Thus the record contains inconsistencies in claimant's account of his work injury. The record does not resolve the inconsistencies, and claimant did not offer testimony addressing them. Therefore, even if we give full weight to claimant's hearsay statements, the record does not establish precisely how his injury occurred."

In the light of its conclusion that claimant had not proved how his injury occurred, the board determined that claimant had not established that he had suffered a work injury that was the cause of his need for treatment for his back strain.

One board member dissented, concluding that claimant's statements in his medical reports demonstrated that he had injured his back while moving pallets at work and that any inconsistencies in his statements were not sufficient to discredit the consistent portions of those statements—that his back had popped and he had felt immediate pain while moving pallets at work using a pallet jack. The dissenting board member further concluded that claimant's case was an "uncomplicated case" under *Uris v. Compensation Department,* 247 Or 420, 427 P2d 753 (1967), that did not require medical evidence to establish that claimant's need for treatment arose from claimant's workplace injury.

Claimant timely petitioned for review, assigning error to the board's conclusion that he failed to prove that his low-back and thoracic strains are compensable.

## II.   STANDARD OF REVIEW

We review the board's interpretation and application of ORS 656.310 for legal error and its factual findings for substantial evidence. ORS 183.482(8)(a), (c); *Jackson County v. Wehren,* 186 Or App 555, 557, 63 P3d 1233 (2003). We review the board's exercise of discretion to determine whether it is within "the range of discretion delegated to the agency by law." ORS 183.482(8)(b)(A).

### III. ANALYSIS

At issue on this appeal is whether the board erred when it determined that claimant had not established that his low-back and thoracic strains were compensable. We understand the board's determination that claimant had not proved that he suffered a compensable injury to rest on its finding that claimant had not proved how his injury occurred and, therefore, had not proved that he had suffered from a work incident that was a material contributing cause of his need for treatment. *Olson v. State Ind. Acc. Com.*, 222 Or 407, 414-15, 352 P2d 1096 (1960). The board's determination that claimant did not prove how his injury occurred is erroneous for two reasons.

First, in finding that claimant had not proved how his injury occurred, the board did not give claimant's statements to his treating doctors about the mechanism of his injury the weight required by ORS 656.310(2), as we construed that statute in *Zurita v. Canby Nursery*, 115 Or App 330, 838 P2d 625 (1992), *rev den*, 315 Or 443 (1993). As noted above, ORS 656.310(2) provides, in pertinent part: "The contents of medical, surgical and hospital reports presented by claimants for compensation shall constitute prima facie evidence as to the matter contained therein." In *Zurita*, we addressed the extent to which the statute requires a claimant's statements contained within those medical records to themselves be considered *prima facie* evidence. Relying on the legislative history of the statute, we concluded that— with respect to statements by claimants in medical reports— the statute was intended to parallel the hearsay exception for statements made for the purpose of medical diagnosis or treatment.[4] *Zurita*, 115 Or App at 334. Accordingly, a claimant's statements in medical reports constitute *prima facie* evidence under ORS 656.310(2) if those statements were for the purpose of medical diagnosis or treatment. Otherwise, a claimant's statements in medical reports are hearsay to which the board may afford whatever weight it deems appropriate under the circumstances. *Id.*

---

[4] *See* OEC 803(4) (providing for admissibility of "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment").

Here, claimant's statements in the medical reports as to how his injury occurred, the nature of the pain that resulted from the injury, and his medical history were all statements that were made for the purpose of medical diagnosis and treatment. *See State v. Moen*, 309 Or 45, 54-59, 786 P2d 111 (1990) (explaining how to determine whether statement is for the purpose of medical diagnosis or treatment so as to fall within hearsay exception). That is because those statements all were "reasonably pertinent" to his doctors' ability to diagnose and treat his injury. *Id.* at 57-58. ORS 656.310(2) therefore required the board to afford those statements *prima facie* weight, at least to the extent that claimant's statements to his doctors did not contradict each other.

When afforded the weight required by ORS 656.310(2), claimant's statements in the medical records establish that, while he was moving pallets using a pallet jack, he experienced a "pop" in his back and immediate pain in his lower back and thighs. Although claimant's statements in the medical records that the injury occurred at work were hearsay, and not statements made for the purpose of medical diagnosis and treatment, under the circumstances of this case, the board had no basis for discrediting those statements. The mechanism of the injury—moving pallets with a pallet jack—is unlikely to occur anywhere but the workplace, and claimant's hearsay statements that the injury occurred at work were not rebutted.

That leads to the board's second error. Apart from incorrectly concluding that claimant's statements in the medical reports were hearsay rather than *prima facie* evidence, the board based its finding that claimant had not proved how his injury occurred on its finding that claimant had made inconsistent statements about the mechanism of the injury. The board further found that "[t]he record does not resolve those inconsistencies." However, given the way that the record in this case has been presented to us, we are unable to say one way or another whether the board's finding of inconsistency is supported by substantial evidence in the record. That is because the board made that finding by disregarding a statement by claimant that may have

resolved the perceived inconsistency. Because that statement is in Spanish, and neither the board nor the ALJ had it translated, we are unable to determine whether "the record, viewed as a whole, [would permit] a reasonable person to make" the finding that claimant's statements were inconsistent, as we would be required to find in order to hold that the board's finding is supported by substantial evidence. *Wehren*, 186 Or App at 557.

Specifically, the board predicated its finding of inconsistency on the fact that claimant's statement to Steinke reflected that claimant had been "lifting" pallets with his arms out in front of him at the time of his injury, but his statements to Heitsch reflected that he had been "pulling" on the pallet jack at the time of his injury. The board (and, evidently, claimant's lawyer below and the concurring doctor) understood claimant's statement that he was "lifting" pallets at the time of the injury to mean that claimant was lifting the pallet with his own hands. Although that is one possible understanding of claimant's statement, another possible understanding of the statement is that claimant was lifting the pallet *using the pallet jack*, and that his arms were out in front of him on the handle of the pallet jack—as they would have to be in order to lift a pallet using a pallet jack. In the event that claimant was lifting the pallet using the pallet jack, claimant's statements to Steinke would be consistent with his statements to Heitsch, short of immaterial discrepancies regarding the estimated weight of the pallet, and whether claimant was loading or unloading a trailer at the time.

What is troubling about this case is that the record *does* contain evidence of an additional statement from claimant that may shed light on whether claimant's initial statements to Steinke are inconsistent with his statements to Heitsch: claimant's statement in his initial Form 827 that he completed with Steinke. We are, however, unable to determine whether it does or does not because neither the ALJ nor the board had the statement translated, even though it was admitted into the record, was relevant to the central issue in the case, and claimant's attorney timely requested an interpreter in compliance with OAR 438-020-0010. Instead, the

board simply observed that the statement was in Spanish and then disregarded it in the course of assessing whether claimant's statements were inconsistent.

We have reviewed the board's rules and have discovered nothing in them that would give the board (or the ALJ) the discretion to disregard written evidence admitted into the record without objection simply because that evidence was not in English. That is particularly so where, as here, the record reflects that the board was alerted prior to the hearing before the ALJ that interpreter services were needed, as is required by the board's procedural rules governing interpreters. Moreover, the legislature has provided that an agency *shall* seek the services of an interpreter whenever one is necessary to perform an adjudicative function. ORS 45.275(1)[5] provides:

> "The court shall appoint a qualified interpreter in a civil or criminal proceeding, *and a hearing officer or the designee of a hearing officer shall appoint a qualified interpreter in an adjudicatory proceeding* whenever it is necessary:
>
> "* * * * *
>
> "(c) To assist the court, agency or hearing officer in performing the duties and responsibilities of the court, agency or hearing officer."

(Emphasis added.)

Given the board's misapplication of ORS 656.310(2), and the fact that the board disregarded otherwise probative evidence in the record simply because it was not translated, we conclude that our standard of review requires a remand to the board under the circumstances of this case. *See* ORS 183.482(8)(a)(B) (when agency has erroneously interpreted a provision of law, court may "[r]emand the case to the agency for further action under a correct interpretation of the law"); ORS 183.482(8)(b) (providing for remand where agency's "exercise of discretion" is "[o]utside the range of discretion delegated to the agency by law").

---

[5] The board has implemented ORS 45.275(1) through OAR 438-020-0005, which provides, in pertinent part, "Pursuant to ORS 45.271(1), an Administrative Law Judge (ALJ) is empowered to appoint qualified interpreters in hearings over which he/she presides."

On remand, the board should assess whether claimant's *prima facie* evidence, along with any relevant hearsay, establishes that the injury to his back that claimant suffered while moving pallets using a pallet jack at work is compensable. To the extent that the board concludes that perceived inconsistencies between claimant's statements to Steinke and Heitsch are material to that analysis, the board must take into account claimant's description of the injury in his initial Form 827 in order to assess whether those perceived inconsistencies actually exist. Finally, in determining whether the evidence presented by claimant, when afforded the weight required by ORS 656.310(2), establishes that claimant has suffered a compensable injury, if the board determines that claimant's medical evidence does not address the mechanism of injury established by the *prima facie* evidence, the board should assess whether the *prima facie* evidence establishes that claimant's injury is not "complicated" under *Uris*, such that medical evidence would not be required to establish that claimant's proven work injury caused his need for treatment. *See Uris*, 247 Or at 426-27; *see also Barnett v. SAIF*, 122 Or App 279, 857 P2d 228 (1993) (applying *Uris*).

## IV.  CONCLUSION

For the foregoing reasons, the order on review is remanded to the board.

Reversed and remanded.