Submitted on briefs December 5, 1956, reversed and remanded
February 6, 1957

# LARSON *v.* STATE INDUSTRIAL ACCIDENT
# COMMISSION

307 P. 2d 314

Robert Y. Thornton, Attorney General, Ray H. Lafky, and Earl M. Preston, Assistant Attorneys General, of Salem, for appellant.

B. Richard Anderson, of Newport, for respondent.

BRAND, J.

This is an appeal by the State Industrial Accident Commission from a judgment for plaintiff based on a jury verdict. Plaintiff was entitled to and received compensation from the Commission on account of an accidental injury by violent and external means in the course of his employment, which injury occurred on 22 September 1954. Plaintiff's claim was duly filed and allowed and he was awarded compensation for temporary total disability. About one year later and on 7 September 1955 the claim was closed, and plaintiff was awarded compensation for permanent partial disability equal to 30 per cent loss of function of the right leg. Being aggrieved by the final order of 7 September, plaintiff filed a timely petition for rehearing, which was denied on 28 October 1955, and plaintiff appealed to the circuit court. From the judgment of that court defendant appeals.

In his amended complaint which was filed on 11 January 1956 plaintiff alleged that he was injured by the falling of a heavy section of a conveyor machine which struck and fractured his right leg, "tearing the ligaments and muscles of said leg and straining his right ankle, and pulling, tearing and straining the muscles and nerve tissues in plaintiff's lower back around plaintiff's right hip; that plaintiff was totally disabled in that he was not able to follow any gainful occupation." In paragraph "V" of said amended complaint the plaintiff alleged:

"That plaintiff was aggrieved by said final order in that his condition was not and is not stationary in that he would benefit by further medical treatment and because his permanent partial disability is equivalent to 70% loss function of the right foot and 100% loss function of the right arm for unscheduled disability relating to plaintiff's back; that plaintiff continued and continues to suffer pain and discomfort in the region of the lower back, right hip, right leg and ankle; that the whole area hereinbefore described is subject to continuous numbness; that plaintiff is unable to maintain his weight upon his right leg at all, or use his leg for any practical purposes; that said condition materially interferes with plaintiff's ability to work or sleep restfully."

The allegations of the amended complaint, paragraph "V", are denied by the answer.

Plaintiff alleges that the petition for rehearing "set out the facts as hereinbefore alleged." We find no evidence that plaintiff required further medical treatment. No issue was submitted to the jury as to whether he required further medical treatment and no objections were made to the form of the special verdict. The

interrogatories submitted and answers given by the jury were as follows:

"1. What is the plaintiff's permanent partial disability suffered as a direct and proximate result of the accident of September 22, 1954, expressed in percentage of loss of function of the right leg?

"Answer: 70%      (0 to 70%)

"2. Did the plaintiff suffer permanent partial disability to his back as a direct and proximate cause of the accident of September 22, 1954?

"Answer: Yes      (yes or no)

"(If your answer is 'No' you need not answer further. If your answer is 'Yes,' you will then answer the following interrogatory.)

"3. What is plaintiff's permanent partial disability, if any, affecting his back as a direct and proximate result of the accident of September 22, 1954, expressed in percentage of loss of function and use of an arm?

"Answer: 65%      (0 to 100%)".

■ As its first assignment the defendant asserts that the court erred in "denying" (overruling) the demurrer to a portion of the complaint. Its "demurrer", made at the opening of the trial on 28 May 1956, was stated as follows:

"Mr. Preston: The defendant at this time demurs to the introduction of any evidence in regards to the plaintiff's second, I guess you would say, cause of action or the cause of action in regards to the back injury on the grounds and for the reason that the Complaint fails to state a cause of action in regards to any back injury."

In its brief the Commission treats the foregoing as being a demurrer to the complaint, and we are content so to treat it. The complaint taken as a whole states a cause of action, and the demurrer, if such it was, was properly overruled.

■■ Defendant next asserts that the court erred in sustaining the plaintiff's motion at the opening of the trial for leave to amend the complaint by interlineation. Paragraph "V" of the amended complaint, as originally filed, alleged that plaintiff continues to suffer "pain and discomfort in the region of the lower back, * * *." The amendment added the word "disabling" before the word "pain". The amended complaint originally alleged disability equivalent to 70% loss function of the right foot. The amendment merely substituted the word "leg" for "foot" to conform to the petition for rehearing filed with the Commission.

Defendant relies upon the holding of this court in *Coblentz v. State Ind. Acc. Com.*, 203 Or 258, 279 P2d 503, to the effect that "Insofar as pleadings are concerned, a court action based upon the Workmen's Compensation Law stands upon the same footing as any other action. ORS 656.002 et seq." Headnote 8. We agree with that ruling but find it inapplicable in this case. Examination of paragraph "V" shows that there was an allegation of loss of function for disability relating to plaintiff's back. The issue was the extent of the disability. An additional allegation that the pain was disabling did not materially enlarge the issues. It merely showed that the alleged pain which would be immaterial unless it caused disability was relevant to the general allegation of back disability. The petition for rehearing which was filed with the Commission alleged a disability to the back but did not allege that the pain was disabling. Defendant relies on ORS 656.288 which provides:

"Upon such appeal the plaintiff may raise only such issues of law or facts as were properly included in his application for rehearing."

We think the issues of fact were substantially the same in the petition for rehearing and in the amended complaint. The assignment of error is technical and unsubstantial.

Defendant next complains of the admission over objection of plaintiff's Exhibit "A" which was a letter signed "State Industrial Accident Commission" by its chairman, under date of 30 November 1955, and which reads, in part, as follows:

"A review of your claim file indicates you may find it advisable to obtain employment in some other line of work due to disability resulting from your injury on September 22, 1954."

No error was committed in the receipt in evidence of this letter. The Commission has at all times acknowledged that plaintiff was suffering a disability and the letter acknowledges its existence but does not indicate an admission that the disability was any greater than had been awarded. As an admission it was admissible, but harmless.

It is claimed that the court erred in denying defendant's motions for nonsuit and for directed verdict because of failure to prove causal connection between the injury and the alleged disability to plaintiff's back. Even if there was no such connecting evidence it would not be ground for nonsuit or directed verdict in view of the evidence of disability to plaintiff's leg, which presented an issue for the jury.

This evidence supporting the plaintiff's claim for an increased compensation on account of disability resulting from the injury to his right leg is supported by the plaintiff's own testimony, and is also supported by testimony of Dr. Lebold on behalf of the defendant Commission. In his complaint the plaintiff alleged,

and in his answer the defendant admitted, that the Commission closed plaintiff's claim by an order of 7 September 1955 and that "said order was the first and last final order relating to claimant." The petition for rehearing which was filed with the Commission was included in the bill of exceptions and certified by the trial judge. It shows that the order closing plaintiff's claim contained an award for permanent partial disability equivalent to 30% loss of function of the right leg. It is alleged and admitted that by order of 28 October 1955 the Commission denied plaintiff's petition. Dr. Lebold estimated the plaintiff's disability at 40% loss function of a leg as against 30% fixed by order of the Commission of 7 September 1955, which order the Commission, in effect, affirmed by its later order of 28 October 1955 denying the petition for rehearing. Defendant asserts in its brief that after Dr. Lebold examined the plaintiff "his disability attributable to the accident was increased to 40% loss of function to the right leg." If the defendant intended to say that the Commission officially increased the rating to 40%, there is no record to show it.

Considering the testimony it was certainly for the jury to say whether plaintiff's disability arising from the injury to his right leg was in excess of the 30% fixed by the Commission, and if so, to what exent.

So far as the transcript of testimony now before us is concerned, we are compelled to say that the undisputed evidence of the plaintiff himself and of his witnesses is a complete refutation of the plaintiff's allegation that he "is unable to maintain his weight upon his right leg at all, or use his leg for any practical purposes". Plaintiff's evidence shows that since 28 December 1955 he has been regularly employed by his old employer; works eight hours or more a day as

maintenance man, does carpentering, digs with pick and shovel, operates a power saw, cross-cut saw or hand saw, lifts planks, and does other work of a comparatively heavy nature, although he does not longer do any high climbing, which formerly was required of him. The fact, however, that plaintiff himself contradicted the allegation of his complaint that he is "unable to * * * use his leg for any practical purposes", did not bar him from his contention supported by evidence that his leg disability was greater than that allowed by the Commission. No error was committed in denying the motion for directed verdict.

In addition to the motions for nonsuit and directed verdict the defendant also moved that the issue concerning the defendant's back should be taken from the jury on the ground

"that there is a complete failure of proof in regards to any causal connection between the accident and the back disability. In fact there is unrebutted testimony in the record that there is no connection between his back complaints and this accident."

This motion requires a consideration of all of the evidence relative to the alleged injury to plaintiff's back. The question now to be considered is unlike that which was before us in *Dimitroff v. State Industrial Accident Commission,* 209 Or 316, 306 P2d 398. In that case we held that it was for the jury to say whether there was any causal connection between the injury which the Commission found to be the proximate cause of total disability just before the claim was closed, and the same total disability to which the plaintiff testified as existing immediately *after* it was closed. In the pending case the award made by the Commission was

for disability caused by injury to the plaintiff's leg, and found to be equivalent to 30% loss of function of that leg. No award was made for disability due to back injury, and the doctor who treated the plaintiff immediately after the injury, set his leg, and saw him 15 or 20 times after he left the hospital, testified as follows:

"Q. Now Doctor, when, if ever, during the time that you were treating him and during his convalescence did he ever make any complaints in regards to his back?
"A. Not to my knowledge."

Plaintiff was injured in September 1954. He returned to work for his old employer in December 1955, only two months after the Commission denied his petition for rehearing. So far as we can ascertain, the plaintiff made no complaint to the Commission or to its doctors concerning his alleged back injury from 22 September 1954 until about the time when he filed with the Commission his petition for rehearing in September 1955. In that petition he asked, not only for an increased award for loss of function of his right leg, but also, for the first time, applied for an award of 100% loss of function of the right arm, because of the condition of his back. The plaintiff offered no expert or medical testimony as to the proximate relation between his back condition and his injury. Plaintiff testified that he has pains in his back and has to use great care in using his back, and a witness said concerning him, "When he goes to pick up something he favors himself an awful lot." On the other hand, Dr. Lebold took X-ray photographs of plaintiff's back and gave the plaintiff a thorough examination. The X-ray disclosed osteoarthritic spurs which constituted degenerative changes having no connection with the in-

jury. There was no evidence of any fracture in the back area. There was no finding suggestive of a herniated disc in the back. He did not consider that the tenderness over the lower spine indicated an injury. The tenderness, in his opinion, was due to arthritic changes. Plaintiff's leg was broken below the knee. Speaking of the effect of the blow on the outer aspect of the right lower leg, the doctor expressed the opinion that the blow would have no twisting or forceful effect on the lower back, by reason of the fact that the flexible knee joint and hip joint intervened between point of the injury and the lower back. The increased disability which Dr. Lebold found was based, in his opinion, upon the stiffness of the ankle, pain in the ankle, and limited motion in the knee. He testified:

"A. * * * Examination of the patient's back with him standing in the middle of the examination room, when asked to show where the tenderness was or where his soreness was, he indicated roughly the sacroiliac region, which is just to the right of the small of the back and in the region of the pelvic bone or hip bone as some people call it. He could bend forward with his knees straight. He could bend forward until the tips of the fingers touched the floor, and in doing so the spine bent forward easily without any apparent hesitancy. Side bending to either side as well as backward bending could be done to within—up to about 50% of the normal range of motion. There was a minimal amount of tenderness over the right sacroiliac joint. * * *

"Q. Doctor, based upon your training and experience, the history that this man has given you and the examination of this man, do you have an opinion as to whether or not the back complaints this man has at the present time are as a direct and proximate result of the accident of September 22nd, 1954?

"A. I do not believe that there is any connec-

tion between his back complaint—I won't say an injury—I'll say his back complaint and his injury."

We think this was a case in which medical testimony was required in order to establish a proximate relation between the injury to the lower leg and the pain and alleged disability in the back.

> "It is a settled rule that where injuries complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science and must necessarily be determined by testimony of skilled, professional persons. * * *
>
> * * * * *
>
> "* * * Generally, to evaluate symptoms and determine the probable cause of an illness requires specialized knowledge and training not possessed by a jury of men drawn from the ordinary walks of life. * * *" *Spivey of Atteberry,* 205 Okla 493, 238 P2d 814, 27 ALR2d 1259.

See also, 65 CJS 1096, Negligence, § 244, Note 76.

■ It may be that at another trial plaintiff will be able to present expert testimony on this issue, but upon the record now before us we hold that the trial court erred in submitting to the jury the question as to the proximate causal connection between the injury and the alleged disability to plaintiff's back.

■ The defendant assigns as error the refusal of the court to give the following instruction:

> "The State Industrial Accident Commission is not in any sense a party adverse to plaintiff. The fund in its hands for disbursement is a trust fund and it must be disbursed only according to law."

Defendant relies upon *Rohde v. State Industrial Acc. Com.,* 108 Or 426, 432, 438, 217 P 627. In that case

this court said of the Commissioners, "They are not in any sense adverse parties against the claimant." The court added, " 'The fund in the hands of the commission is trust money.' " But in the Rohde case the court was discussing the nature of the duties of the Commission in carrying out their administrative functions. It is true that in the course of that administrative procedure the Commission acts in a quasi judicial capacity and not as a party adverse to the injured workman, but when the administrative functions have been fulfilled for the time being and the case has been taken to the circuit court on appeal, the situation is different. Before the circuit court the Commission appears as a defendant. The comment in the Rohde case was not intended as the basis for an instruction in a jury trial in which the defendant Commission has assumed a position adverse to that of the plaintiff. We find no error in the refusal of the trial court to give the requested instruction.

The presumption supporting the finding of the Commission to which we referred in the Dimitroff case supra related to the presumed validity of the administrative decision which was made when the Commission was still acting as an impartial administrator of a trust fund. It did not relate to the conduct of the Commission after being hailed into the circuit court on appeal.

■ Finally the defendant asserts error by reason of the failure of the court to give a requested instruction in conformity with ORS 17.250(5) which provides:

"That in civil cases the affirmative of the issue shall be proved, and when the evidence is contradictory, the finding shall be according to the preponderance of evidence; * * *."

The requested instruction should have been given.

In this case as in the companion case of *Dimitroff v. State Industrial Accident Commission,* supra, the court erroneously acted upon the belief that the plaintiff in this type of case has no burden of proof. As held in *Dimitroff v. State Industrial Accident Commission,* the plaintiff does have the burden of proving that his disability and consequent right to compensation is greater than that awarded by the Commission. In the pending case the court gave no instruction on the burden of proof nor on the presumption favoring the administrative decision. On the contrary the circuit court instructed that the case is tried "what we call de novo, that's all over, anew, and whatever the Commission, its Answer was, is disregarded so far as you are concerned here, and you will determine from what you hear here from the witness stand and what you feel the Answer should be." We assume that upon a subsequent trial the jury will be properly instructed concerning the burden of proof and the disputable presumption of regularity in the administrative finding of the Commission.

The judgment for the plaintiff is reversed and the cause is remanded for a new trial.