Argued July 9, reversed July 15, 1959

# ORR *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

342 P. 2d 136

*T. Walter Gillard,* Assistant Attorney General, Portland, argued the cause for appellant. With him on the brief were Robert Y. Thornton, Attorney General, and Ray H. Lafky, George S. Woodworth and John L. Stoneburg, Assistant Attorneys General, Salem.

*James B. Griswold* argued the cause for respondent. On the brief were Green, Richardson, Green & Griswold, Portland.

Before McALLISTER, Chief Justice, and LUSK, SLOAN and MILLARD, Justices.

MILLARD, J. (Pro Tempore)

This is an appeal by defendant from a judgment of the Circuit Court of Multnomah County rendered in a workmen's compensation case wherein plaintiff was claiming and, pursuant to a jury verdict, was allowed compensation for permanent partial disability on account of thirty per cent loss of vision of his right eye, and his attorney fees.

As the first assignment of error, defendant contends that the court erred in denying its motion for involuntary nonsuit. This motion appears to have

been based upon two grounds. The principal ground urged was the failure of plaintiff to offer or produce expert medical testimony to establish a causal connection between the injury and loss of vision, and, secondly, lack of expert medical testimony evaluating the degree or percentage of any alleged loss of vision, or, in other words, lack of expert medical testimony establishing the extent of his disability.

■ In passing upon this question, we are required to view this evidence in the light most favorable to plaintiff. Briefly, it appears that plaintiff, a machinist, was the sole witness in the case, there being a complete absence of expert medical testimony. He testified that while employed by a machinery company and while operating a drill press in reconstructing a valve, there was a shattering of the metal and some of it entered his right eye. As a result, plaintiff was operated on three times for the purpose of removing this metal. He had good vision before the accident. Afterward he was required to wear glasses. With his glasses on and with both eyes open, plaintiff testified that in reading fine print, especially blueprints, "it blurs on me" and about arm's length in front of him it "looks just like an oil film or water spots." With his left eye shut and about an arm's length in front there appeared a dark spot. He could not read at any point where these blurry or dark spots appeared. He could read with his right eye closed. Using both eyes, with glasses, so-called specks of soot seemed to appear when the light was very bright.

For the purpose of this opinion and for reasons that hereafter appear, we shall, without deciding defendant's first contention, assume that a causal relation between the accident and resulting injury was

sufficiently shown, and pass on to his next contention to the effect that expert medical testimony was required of plaintiff to show the extent of his disability.

In making that determination, it is necessary that we refer to the applicable provisions of the Workmen's Compensation Act, which are immediately hereafter set forth.

"656.214 (1) Permanent partial disability means the loss of either one arm, one hand, one leg, one foot, loss of hearing in one or both ears, loss of one eye, one or more fingers, or any other injury known in surgery to be permanent partial disability.

"(2) When permanent partial disability results from an injury, the workman shall receive $46.50 for each degree stated against such disability as follows:

\* \* \*

"(h) For partial or complete loss of vision of one eye, that proportion of 100 degrees which the loss of monocular vision bears to normal monocular vision. For the purposes of this section, the term normal monocular vision shall be considered as Snellen 20/20 for distance and Snellen 14/14 for near vision with full sensory field."

In addition it is provided:

"(i) \* \* \* In all cases of partial loss of sight, the percentage of said loss shall be measured with maximum correction."

From this, defendant in effect argues that since the allowance of compensation is based upon degree of disability, and since it is well known that loss of vision in an eye is capable of almost exact scientific measurement, and since a jury would be incapable of correctly determining the degree of disability in such a case, the plaintiff should produce expert testimony bearing upon the extent of his disability so that the jury should

be correctly advised. Otherwise conjecture and pure speculation would necessarily enter into the final determination.

"* * * reliance on lay testimony and administrative expertise is not justified when the medical question is no longer an uncomplicated one and carries the fact finders into realms which are properly within the province of medical experts." Vol 2, Larson, Workmen's Compensation Law 303, § 79.54.

In *Oliver v. Potlatch Forests,* 73 Ida 45, 245 P2d 775, it was held that where it requires expert, scientific and professional skill to determine cause, origin and extent of disability, proof thereof must be supplied by skilled professional witnesses. This is also the rule in this state. *Larson v. State Industrial Accident Commission,* 209 Or 389, 399, 307 P2d 314. In *Henderson v. Union Pacific Railroad Co.,* 189 Or 145, 161, 219 P2d 170, where it was held that lay testimony is sometimes admissible on the issue of causation, the court said the rule was as follows:

"* * * But where, as here, the physical processes terminating in death are obscure and abstruse, and concerning which a layman can have no well-founded knowledge and can do no more than indulge in mere speculation, there is no proper foundation for a finding by the trier without expert medical testimony." (Quoting from *Burton v. Holden & Martin Lumber Co.,* 112 Vt 17, 20 Atl2d 99, 135 ALR 512).

We think this statement applies as well to the question of determining the extent of disability. In *Henderson v. Union Pacific Railroad Co.,* supra, it was also held:

"* * * Before a case can be submitted to a jury in this jurisdiction the proof of material issues must have the quality of reasonable certainty, and

a finding dependent upon conjecture and speculation will not be permitted to stand."

See cases there cited: *McKay v. State Industrial Accident Commission,* 161 Or 191, 198, 87 P2d 202; *Vale v. State Industrial Accident Commission,* 160 Or 569, 576, 86 P2d 956; *Frint v. Amato,* 131 Or 631, 647, 284 P 183. Of course, as stated in *Wilson v. State Industrial Accident Commission,* 162 Or 588, 599, 94 P2d 129, the rule requiring expert medical testimony is restricted to those cases involving merely a question of medical science of such a nature that only medical experts are qualified to express an opinion upon it. In the instant case, it does not require any extensive statement to establish that it would be virtually impossible for a jury to arrive at a proper degree of loss of vision under the statutory rule above set forth in ORS 656.214(2) (h). Such a matter should not be left to the conjecture and speculation of a jury when it is common knowledge that the degree of disability in the case of partial loss of vision can be measured with scientific exactitude.

In *National Tank Co. v. Gold,* 185 Okl 574, 95 P2d 235, the precise question was presented. In that case, where the right to workmen's compensation was involved, the injury had to do with partial loss of vision to a left eye. It was held that the injury was such "as to require a determination of its nature and extent by skilled and professional persons and had to be proved by the testimony of such persons."

■ In *Dowell v. Department of Labor and Industries,* 51 Wash2d 28, 319 P2d 843, 846, it was held that in relation to workmen's compensation cases only medical men are qualified to give an opinion on extent of partial disability in terms of percentages. See, also,

*Harper v. Department of Labor and Industries,* 46 Wash2d 404, 281 P2d 859; *Clayton v. Department of Labor and Industries,* 48 Wash2d 754, 296 P2d 676. We are in accord with this rule as applying to cases involving partial loss of vision.

We have carefully reviewed all the authorities cited by both sides. Most of them have to do with complete loss of vision or with matters having to do with causation or with degrees of disabilities for injuries other than loss of vision, which could be testified to by lay witnesses and not requiring a scientific examination. In some instances, lay witnesses were permitted to testify as to the extent of disability to an eye, although for the most part the question on appeal related to causation. In any event, we do not find them controlling here as regards extent of disability as related to partial loss of vision.

In view of the conclusions reached, it follows that the court erred in denying the motion for nonsuit. Since the additional assignment relates to denial of a motion for directed verdict on the same grounds as motion for nonsuit, it follows that the court also erred in denying such motion. The judgment of the trial court is, therefore, reversed.