Argued April 6, reversed and remanded with directions May 17,
motion for allowance of attorney's fee denied
August 23, 1967

## URIS, *Appellant, v.* STATE COMPENSA-
## TION DEPARTMENT,* *Respondent.*

427 P. 2d 753
430 P. 2d 861

---

* Succeeded the State Industrial Accident Commission of the
State of Oregon during the pendency of this proceeding: Oregon
Laws 1965, ch 285, § 55.

*Nick Chaivoe,* Portland, argued the cause for appellant. On the briefs were Peterson, Chaivoe & Londer and Sanford Kowitt.

*Harold W. Adams,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, and Wallace Carpenter, Assistant Attorney General and Chief Counsel for the State Compensation Department.

Before PERRY, Chief Justice, and SLOAN, GOODWIN, LUSK and FORT, Justices.

LUSK, J.

This is an action under the former Workmen's Compensation Law. After the jury returned a verdict for the plaintiff the court entered judgment n.o.v. for the defendant. Plaintiff appeals.

The sole question is whether there was sufficient evidence of causal relation between the occurrence testified to by the plaintiff and his injury to carry the case to the jury.

The facts are as follows: On September 6, 1963, plaintiff, then a student at Portland State College, was employed at Reed College moving books from the old to the new library. His job required him to load the books on a three-tiered cart with very small wheels and, after transporting them to the new library, to put them on the shelves there. On the third day of this work the following occurred, according to the plaintiff's testimony:

"Well, the carts, having small wheels and being balanced with a heavy load of books, tended to easily shift their weight, and they could topple over. When I had a large number of books and moved them down to a lower tier, shelf, well, at that time out of the corner of my eye I saw that the cart was starting to go, and I reached out to, you know, push it straight, to push the books straight, worrying about the books falling over; and at that time I felt a relatively sharp pain, a pretty sharp pain in my back."

Plaintiff testified that he reported the incident to Miss Pollock, the librarian, and she sent him to the infirmary where he saw Dr. Gregg Wood, who looked at his back and said he could not determine the nature or extent of his injury and advised him not to do any more heavy work such as book moving, and to sleep on a mattress with a board under it. Plaintiff was then given a night watchman's job at Reed College which continued until September 24, when he resumed his studies at Portland State College. Ever since the accident plaintiff has experienced back pain from time to

time in greater or less degree, especially when he is tired. In June 1964 plaintiff and his wife moved from their apartment to a house. In using a bamboo rake to clean up the back yard he was "pretty exhausted" after an hour's work and would be in "quite a good deal of pain." The pain ranged from the small of his back, but particularly it went down his right leg on the inside of it. In March, 1964, he consulted Dr. Charles M. Grossman about another ailment not related in any way to his back injury and he did not at that time mention any difficulty about his back. The first time that he did so after seeing Dr. Wood was on August 13, 1964, when he told Dr. Grossman, as the latter testified, "that he had injured his back in September of 1963 while working at Reed College." Dr. Grossman testified that he examined the plaintiff's back and found "some increase of his lumbar lordosis" (the normal curve of the lumbar spine). Dr. Grossman testified that the plaintiff did not give him a history of how he was injured and he did not know whether he had any subsequent data on that subject. Plaintiff went to Dr. Grossman about his back on November 12, 1964, November 17 and December 8, but the next time he saw the doctor, on December 24, although his back was bothering him, he had other difficulties which required surgery. X rays were taken at this time, but none which would disclose whether plaintiff had a back injury. Dr. Grossman's diagnosis of the back injury was as follows:

> "* * * I feel he had a chronic lumbo sacral strain, and that there was a distinct, there were evidences of root irritation and that we had to be on the lookout for a disc. There wasn't sufficient information to make a positive diagnosis of a disc then or up to now at this point."

In response to a hypothetical question, which the defendant contends was insufficient, Dr. Grossman testified that "the accident" was probably responsible for plaintiff's back difficulty.

Plaintiff testified that he suffered during childhood from a back ailment referred to as rheumatoid arthritis, but that he recovered from it completely before he reached the age of 13 or 14 years. The evidence justifies a finding that this condition was not connected with the injury of which plaintiff complains.

The defendant introduced no evidence, but rested and moved for a directed verdict at the conclusion of plaintiff's case on the ground of insufficiency of the evidence of causation. In denying the motion the judge stated that if the jury returned a verdict for the plaintiff he would set it aside. Specifically, it is the defendant's contention that medical testimony was essential to establish causation and that Dr. Grossman's testimony as to the cause of plaintiff's injury lacks probative value because it was based upon a hypothetical question which did not include a statement of the occurrence which plaintiff claims caused the injury.

■■ It is, of course, the settled rule that
"* * * where injuries complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science and must necessarily be determined by testimony of skilled, professional persons. * * *"

*Spivey v. Atteberry,* 205 Okla 493, 494, 238 P2d 814, 27 ALR2d 1259, quoted with approval in *Larson v. SIAC,* 209 Or 389, 399, 307 P2d 314. As we said in *Ritter v. Sivils,* 206 Or 410, 413, 293 P2d 211: "If the

issue turns upon some fact beyond the ken of laymen, expert testimony must be produced * * *."

The rule was held applicable in the *Larson* case on the question whether the plaintiff had suffered an injury to his back. He claimed that such an injury was one of the results of his leg being broken below the knee. We held that medical testimony was necessary for this purpose. There was no such apparent connection between the accident in which the claimant's leg was broken and his back injury that a layman could say that the back injury was caused by the accident. In the recent case of *Howerton v. Pfaff,* 246 Or 341, 425 P2d 533, the question was whether medical testimony was needed to prove that an inguinal hernia sustained by the plaintiff was caused by a collision between two automobiles, one of which was driven by the plaintiff. We held such evidence was needed because no indication of the presence of the hernia appeared until about three weeks after the accident and the only evidence of injury at the time of the accident was that he was "shook up" and his neck hurt. In other words, there was no trauma or strain in the region of the body where the hernia later appeared.

But in hernia cases a different result may be reached in "a simple situation * * * where, in point of time, the relationship between sudden strain at work, the first symptoms and the hernia was so close and immediate, and where, on the undisputed facts, a layman could clearly reasonably infer, without medical testimony, that the strain caused the hernia": *Lovely's Case,* 336 Mass 512, 515, 146 NE2d 488. See, also, *Valeri v. Village of Hibbing,* 169 Minn 241, 211 NW 8, 60 ALR 1296. Cf. *Crowley's Case,* 287 Mass 367, 191 NE 668, and *Casey's Case,* 348 Mass 572, 204 NE2d 710.

Similarly, in a case of low back strain claimed to have been sustained by an automobile repairman while using a long wrench, the petitioner's testimony as to the accident and its consequences was held sufficient to make a prima facie case on the question of causation: *Costa v. Cars, Inc.*, 96 RI 396, 192 A2d 1. Another case of low back strain in which the court held that medical testimony was not essential for proof of causation is *Marley Construction Co. v. Westbrook*, 234 Miss 710, 720, 107 S2d 104, 108. See, also, *Nash-Kelvinator Corp. v. Industrial Comm.*, 253 Wis 618, 34 NW2d 821; *DiFiori v. U. S. Rubber Co.*, 78 RI 124, 79 A2d 925; *Jarka Corporation of Philadelphia v. Norton*, 56 F2d 287; Larson's Workmen's Compensation Law § 79.51.

*Orr v. SIAC*, 217 Or 249, 342 P2d 136, cited by the defendant, is not in point. Causation was not involved. The question was as to the extent of the impairment of plaintiff's vision, a matter, as we said, "capable of almost exact scientific measurement" (217 Or at 252) and which a jury would be incapable of correctly determining.

In the compensation cases holding medical testimony unnecessary to make a prima facie case of causation, the distinguishing features are an uncomplicated situation, the immediate appearance of symptoms, the prompt reporting of the occurrence by the workman to his superior and consultation with a physician, and the fact that the plaintiff was theretofore in good health and free from any disability of the kind involved. A further relevant factor is the absence of expert testimony that the alleged precipitating event could not have been the cause of the injury: *DiFiori v. U. S. Rubber Co.*, supra.

■■ Here the plaintiff, who had had no trouble with his back since he was 13 or 14 years of age, reached out to prevent a truckload of books from toppling over and as he did so felt a sharp pain in his back. Plaintiff was, of course, a competent witness as to the pain he suffered and his impaired ability to perform physical labor: *Wilson v. SIAC*, 162 Or 588, 599, 94 P2d 129. He reported the incident to his ᵌmployer and went immediately to a doctor, who found a back injury of undisclosed character and extent. From that time forward he felt the effect of the injury and ultimately, when the pain became worse, he consulted a doctor, who diagnosed the condition as chronic lumbosacral (low back) strain. There is nothing very complicated about such an injury and its cause. Neither was it beyond the competence of a jury of laymen to infer from the entire testimony that the sudden movement to which the plaintiff testified caused the pain he felt at that moment and the condition from which he suffered thereafter.

In view of this conclusion, it is unnecessary to pass upon the question of the sufficiency of the hypothetical question.

■ Defendant seeks to support its position by pointing to plaintiff's delay of nearly a year before consulting a physician (other than Dr. Wood) about his back and before filing a claim with the Accident Commission. Plaintiff testified to his reasons for the delay. The contention goes to the credibility of the plaintiff and the weight of his evidence and raised a question for the jury, which evidently resolved it in favor of the plaintiff.

We are of the opinion that there was sufficient evidence to take the case to the jury and the court erred in entering judgment n.o.v. for the defendant.

The judgment is reversed and the cause is remanded with directions to reinstate the judgment entered upon the verdict of the jury.

## ON PETITION FOR ALLOWANCE OF ATTORNEY'S FEE

Peterson, Chaivoe & Londer and Sanford Kowitt, Portland, for the motion.

Robert Y. Thornton, Attorney General, and Quintin B. Estell, Assistant Attorney General, Salem, contra.

Before Perry, Chief Justice, and Sloan, Goodwin and Lusk, Justices.

PER CURIAM.

Plaintiff has moved for allowance of an attorney's fee for the services of his attorney in this court.

■ Authority to make such allowance does not exist unless it is found in the statute: *Adair v. McAtee,* 236 Or 391, 396, 385 P2d 621, 388 P2d 748; *Gorman et ux v. Jones et ux,* 232 Or 416, 420, 375 P2d 821. There are two sections of the Workmen's Compensation Law providing for the allowance of an attorney's fee by the courts. ORS 656.386 (1), formerly 656.588 (1), authorizes the circuit court to allow a reasonable attorney's fee where a claimant prevails in an appeal to the circuit court from a Board order (formerly a Commission order). ORS 656.301 (2), formerly ORS 656.292 (2), provides that on appeal by the Department (formerly by the Commission) or an employer from an adverse decision of the circuit court, if the judgment of the circuit court is affirmed, the claimant shall be allowed an attorney's fee to be fixed by the court. At no time has there been a statute authorizing the court to allow an attorney's fee where the claimant appeals to this court from an adverse judgment of the circuit court and is successful.

It follows that, whether the former or present statute be applicable, the motion cannot be allowed.

On remand to the circuit court the plaintiff will be entitled to the award of an attorney's fee for services of his attorney in that court.

The motion is denied.