Argued January 21, affirmed February 28, 1977

MATHERLY, *Appellant,*
*v.*
STATE ACCIDENT INSURANCE FUND,
*Respondent.*
(No. 95668, CA 7108)
560 P2d 682

Gregory Decker, Albany, argued the cause for appellant. On the brief were Emmons, Kyle, Kropp & Kryger and J. David Kryger, Albany.

W. Benny Won, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Lee, Judges.

LEE, J.

**LEE, J.**

In this workmen's compensation case the referee, the Workmen's Compensation Board and the circuit court have each affirmed a determination order which, in effect, granted claimant a permanent partial disability award of 40 percent loss of function of the right leg.[1] Claimant appeals, contending alternatively that his compensable knee injury was a substantial cause of a generalized rheumatoid arthritic condition which has rendered him incapable of regularly performing any work at a gainful and suitable occupation and that he is, therefore, entitled to an award of permanent total disability,[2] and that the award of 40 percent disability does not adequately reflect the extent to which he has lost the use of his right leg.

On February 4, 1970, claimant, a 53-year-old safety inspector employed by the Workmen's Compensation Board, slipped while alighting from a pickup truck, twisting and injuring his right knee in the process. The knee was initially examined on February 9, 1970 at which time the injury was diagnosed simply as a "strain"; one week later an examination by Dr. Merle Brown indicated that the injury had damaged the knee's "ligamentous structures." After a course of

---

[1] ORS 656.214(1)(a) and (2)(c) provide:

"(1) As used in this section:

"(a) 'Loss' includes permanent and complete or partial loss of use.

"* * * * *

"(2) When permanent partial disability results from an injury, the workman shall receive $70 for each degree stated against such disability as follows:

"* * * * *

"(c) For the loss of one leg, at or above the knee joint, 150 degrees, or a proportion thereof for losses less than a complete loss."

[2] ORS 656.206(1)(a) provides:

"(1) As used in this section:

"(a) 'Permanent total disability' means the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the workman from regularly performing any work at a gainful and suitable occupation."

[ 693 ]

physical therapy had proven to be unsuccessful in rehabilitating the injured knee claimant was seen by Dr. Donald Paluska, an orthopedic surgeon, on June 12, 1970; Dr. Paluska's examination disclosed a chronic collateral ligament strain with secondary knee effusion *and* degenerative arthritis of the knee.

Between August of 1970 and April of 1973 claimant continued to receive treatment for the knee injury, which was believed to be slowly resolving, and for his more serious vascular and arthritic problems. Dr. Robert Rinehart, a rheumatologist, examined claimant on April 10, 1973 and diagnosed his existing condition as a chronologically continuous "musculoskeletal reaction usually characterized as rheumatoid arthritis," affecting many parts of the body other than the knees, which he believed to have been caused or aggravated at least in part by the injury of February 4, 1970. Dr. Rinehart's diagnosis of generalized rheumatoid arthritic disease was later confirmed by Dr. Paluska, Dr. Theodore Pasquesi, and Dr. Edward Rosenbaum, all of whom examined claimant between October 1974 and July 1975; each of these physicians, unlike Dr. Rinehart, concluded, however, that there was no causal connection between the traumatic knee injury of February 1970 and the development of the disease.

A claimant has the burden of proving by a preponderance of evidence that a compensable injury to one part of the body is a material contributing factor to the development of a disabling condition affecting other parts of the body if that condition is itself to be compensable. *Standley v. SAIF,* 8 Or App 429, 495 P2d 283 (1972). Thus, in this case claimant had the burden of establishing by a preponderance of evidence that the injury to his knee was a material contributing factor to the development of debilitating rheumatoid arthritis throughout much of his body. Claimant concedes that the determinative question of causation was, in this case, sufficiently complex to require that it be established by the weight of expert medical evi-

dence. *See Uris v. Compensation Department,* 247 Or 420, 427 P2d 753, 430 P2d 861 (1967).

Although Dr. Rinehart did reiterate at the hearing before the referee his opinion that claimant's knee injury, together with resulting stress, "in all probability precipitated his rheumatoid disease," with many other factors perpetuating it, that view was, as noted above, disputed by the expert opinions of three other physicians.

Dr. Paluska who treated claimant periodically between the time of his injury and November 1972 and who examined him again in December of 1973 and October of 1974 concluded after his last examination that the presence of arthritis in both claimant's upper and lower extremities was "due solely" to rheumatoid disease and unrelated to the industrial injury of 1970. Following his own examination of claimant in December of 1974 Dr. Pasquesi offered the opinion that

"[f]rom an orthopedic standpoint related to [claimant's] industrial injury, it is my feeling that this [claimant] has reached a stationary stage and had reached a stationary stage probably several years ago. The [claimant] has severe problems which are based on rheumatoid arthritis and affect many other parts of his body. I personally cannot make a probable relationship of his rheumatoid arthritis to his industrial injury."

Finally, Dr. Rosenbaum, a rheumatologist who examined claimant in July of 1975, concluded that while he agreed with Dr. Rinehart's diagnosis of rheumatoid arthritis and with his preliminary conclusion that the disease can in some cases be causally related to stress and emotional tension,

" '[i]f the accident, in itself, was a precipitating or aggravating cause, then the accident would have had to be of a severe nature and the rheumatoid arthritis would have had to have occurred within a very short time after the stress, if we are to assume a [causal] relationship. In this particular patient, the period of time between his injury and the ultimate development of his rheumatoid arthritis does not appear to be related.' * * *"

[ 695 ]

■ Faced with this conflict we find, as did the referee, the Workmen's Compensation Board and the circuit court before us, that claimant has failed to meet his burden and has not established by a preponderance of evidence a causal relationship between the injury to his knee and the arthritic condition now present in many parts of his body. *See Ritz v. SAIF,* 27 Or App 725, 557 P2d 50 (1976), Sup Ct *review denied* (1977).

We are also satisfied that the award of permanent partial disability of 40 percent loss of use of claimant's right leg provides adequate compensation for the disability resulting from the compensable knee injury.

Affirmed.