*[183]
 
 RICHARDSON, J.
 

 Claimant appeals from a judgment of the circuit court affirming a decision of the Workers’ Compensation Board (Board) that she was not permanently and totally disabled but was only entitled to a scheduled disability award of 20 percent loss of her right arm and 10 percent loss of her left arm.
 

 Claimant, aged 52, was employed as a "stock cutter” for a rubber mill, a job which involved the pulling and cutting of rubber stock. In September 1972, she suffered an injury to her right arm. She received some treatment for this injury, and in January 1973, a determination order awarded her temporary total disability for the time she missed from work while recuperating. Upon returning to work claimant began to favor her right arm, and consequently put more stress on her left arm which soon began to trouble her. In March 1974, she filed a claim for job related injury to her left arm. The State Accident Insurance Fund accepted this claim as an aggravation of the original injury, and the claim remained open for two years. She had surgery on her right arm during this period. A second determination order of March 1976, awarded claimant scheduled permanent partial disability for 20 percent loss of the right arm and nothing for the left. Claimant requested a hearing. The referee found that claimant was permanently and totally disabled. The Board reversed the referee’s finding of permanent total disability, reinstated the award of 20 percent loss of the right arm and awarded permanent partial disability for 10 percent loss of the left arm.
 

 Claimant asserts that the injury to her right arm combined with the injury to her left arm rendered her permanently and totally disabled. She asserts that despite the medical evidence to the contrary she has effectively lost the use of both arms.
 

 At the hearing, claimant testified that she has pain
 
 *[184]
 
 in both arms, and that as a result she is.unable to return to her job. She testified that she can perform most everyday household chores, but that she has difficulty performing tasks such as weeding or fishing for any length of time. Claimant stated that she must exercise her arms on a daily basis lest they become stiff. The referee, after reciting the facts and without additional discussion, held that claimant was permanently and totally disabled. The Board reversed the finding of permanent total disability and awarded claimant 19.2 degrees scheduled disability for her left arm in addition to the award for the right arm. The circuit court affirmed the Board’s order.
 

 ORS 656.206(l)(a) defines permanent total disability as:
 

 «* * * [T]he loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the workman from regularly performing any work at a gainful and suitable occupation.”
 

 In all but "uncomplicated situation[s],”
 
 see, Uris v. Compensation Department,
 
 247 Or 420, 427 P2d 753, 430 P2d 861 (1967), claimant must meet the burden of proving the extent of disability through the use of competent medical evidence. As was stated in
 
 Larson v. State Ind. Acc. Com.,
 
 209 Or 389, 399, 307 P2d 314 (1957):
 

 "* * * [W]here injuries complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science and must necessarily be determined by testimony of skilled, professional persons.’ ” Quoting
 
 Spivey v. Atteberry,
 
 205 Okla 493, 238 P2d 814, 27 ALR2d 1259 (1951).
 

 The record reveals that four doctors have examined claimant since her surgery in January 1975. Dr. Bump, the physician who performed the surgery, reported on February 24, 1975, that claimant was on an active exercise program, and that "[h]opefully she will be able to return to work in four to six weeks.” On
 
 *[185]
 
 May 7, 1975, Dr. Bump released claimant to return to work. Dr. Dresher, who examined claimant in November 1975, reported that claimant suffered from "gross weakness” of both hands, though Dr. Dresher concluded that "she exaggerated this somewhat.” Dr. Dresher stated that he did not believe claimant could return to her job "as she describes it.” In January 1976, the Orthopaedic Consultants examined claimant and stated:
 

 "We would estimate that the total loss of function, in the right arm, as it exists today (with regard to the right elbow) is mild. The loss of function due to this injury is mild. In the left elbow we would estimate the loss of function as it exists today as minimal. * * *
 

 "We do not feel that she can return to the same occupation. * * * She could return to some other occupation, as long as it does not involve lifting and pulling with the upper extremities. * * *”
 

 In May 1976, Dr. Walz, claimant’s family physician, submitted a report that stated only that claimant was "[permanently disabled from, work involving use of hands [and] arms.”
 

 We conclude that the Board correctly held that claimant had not met her burden of proving that she was permanently and totally disabled. The only medical evidence to this effect is the one-sentence report of Dr. Walz. To the contrary, the reports of Dr. Bump and Dr. Dresher, as well as that of the three physicians comprising the Orthopaedic Consultants, all indicate that claimant is not totally disabled, and that she could perform some type of job. These reports are substantiated at least in part by claimant’s description of her everyday household activities.
 

 Claimant next contends that the award of scheduled disability should have been 115.2 degrees as opposed to the 19.2 degrees ordered by the Board. On matters such as this involving the correlation of the severity of an injury with the amount of compensation awarded, we ordinarily will defer to the expertise of
 
 *[186]
 
 the Board.
 
 See, Frantz v. SAIF,
 
 30 Or App 927, 569 P2d 31 (1977). Claimant has pointed to no evidence which indicates that the Board’s evaluation here was incorrect.
 

 Affirmed.