CANDEE, *Claimant-Respondent-*
*Cross-Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND,
*Petitioner-Cross-Respondent.*
(WCB No. 77-2953, CA 12172)

595 P2d 1381

[567]

Lawrence J. Hall, Associate Counsel, State Accident Insurance Fund, Salem, argued the cause for petitioner-cross-respondent. With him on the briefs were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Salem.

John L. Klor, Portland, argued the cause for respondent cross-petitioner. With him on the brief was Jones, Lang, Klein, Wolf & Smith, Portland.

Before Schwab, Chief Judge, and Buttler and Joseph, Judges.

JOSEPH, J.

**JOSEPH, J.**

The State Accident Insurance Fund (SAIF) appeals from an order of the Workers' Compensation Board ordering payment of temporary total disability compensation to claimant for a period during which she received payments directly from her non-complying employer and, further, ordering SAIF to pay a penalty and attorney's fee for unreasonable delay in making payment. Claimant cross-appeals that part of the order which denies her permanent partial disability compensation.

## SAIF Appeal

On May 12, 1976, claimant, then a bartender, suffered a compensable injury when she was struck in the head with a catsup bottle and beaten with a chair by a patron of her employer. The employer was not in compliance with the Workers' Compensation Act (ORS 656.001—656.794), and, therefore, was not protected by the exclusive remedies provided under the Act (ORS 656.018) and was subject to an action for damages by any employee injured on the job. ORS 656.020.

Subsequent to her on-the-job injury, claimant did not work until she was released by her treating doctor for modified work on September 23, 1976. Her employer had paid her an amount equal to her wages from May 12, 1976, through July 15, 1976. On October 4, 1976, the Board's Compliance Division declared claimant's employer to be non-complying and ordered SAIF to process claimant's claim pursuant to ORS 656.054(1).[1] SAIF accepted the claim and paid claim-

---

[1] ORS 656.054(1) provides:

"A compensable injury to a subject worker while in the employ of a noncomplying employer is compensable to the same extent as if the employer had complied with ORS 656.001 to 656.794. A claim for compensation made by such a worker shall be processed by the State Accident Insurance Fund in the same manner as a claim made by a worker employed by a contributing employer, except that the time within which the first instalment of compensation is to be paid, pursuant to subsection (4) of ORS 656.262, shall not begin to run until the director has referred the claim to the State Accident Insurance Fund."

[569]

ant temporary total disability compensation from July 16, 1976, through September 10, 1976.

Claimant requested a hearing, at which she contended that SAIF was liable for temporary total disability compensation for the period prior to July 16, 1976, even though her employer had paid her a sum equal to her wages during that period. The referee ruled that question had to be resolved in the first instance by the Board's Evaluation Division. On March 23, 1977, a determination order granted claimant temporary total disability compensation from May 12, 1976, through September 22, 1976, less time worked.

SAIF did not request a hearing on that determination, but it declined to make payments to claimant for the period between May 12, 1976, and July 15, 1976. The referee, following a hearing requested by claimant, ruled that she was entitled to those payments, and, in addition, to a penalty and attorney's fee for the Fund's refusal to pay that compensation. The Board affirmed.

On appeal, SAIF points out that to allow claimant to receive compensation during the period her employer paid her results in the claimant's receiving double compensation, which it characterizes as unjust enrichment. Further, it argues, we should construe the Act to encourage employers, even non-complying employers, to pay their employees injured on the job pending the processing of their claim for compensation under the Act. SAIF argues that the employer would be penalized by requiring him to pay twice.

The Act does not expressly cover the instant situation.[2] Claimant urges that, as a matter of public

---

[2] ORS 656.262(9) provides:

"The fund may authorize contributing employers to pay compensation to injured workers and shall reimburse employers for compensation so paid."

The provision is inapplicable here because the employer is a non-contributor and because the payments were not authorized by the fund.

policy, we should allow the double recovery because that result is more likely to effectuate the purposes of the Act, including compliance with all of its terms. On the other hand, the overriding public policy in the Act is that injured employees be paid for their work time lost as a result of covered injuries. As between the claimant who has in fact been compensated and the non-complying employer, we see no compelling reason to uphold an award that overcompensates the claimant. The enforcement of the Act is a matter between the employer, the Workers' Compensation Department and the legislature. The non-complying employer is subject to civil liability to its injured workers (ORS 656.020; 656.578). That liability has been determined by the legislature to be the incentive for a non-complying employer to comply with the law. The policy makers might decide something more is needed, but we decline to exercise that role. We therefore reverse the Board's order for compensation, penalty and attorney's fee.

### Claimant's Cross-Appeal

In her cross-appeal, claimant contends she is entitled to an award of permanent partial disability, both scheduled and unscheduled. There is no medical evidence that any of claimant's injuries or symptoms are permanent; she claims, however, that medical evidence is unnecessary because her medical situation is an uncomplicated one and her testimony with respect to her symptoms is sufficient to support an award of permanent disability. *See Uris v. Compensation Dept.*, 247 Or 420, 426 P2d 753, 430 P2d 861 (1967).

Immediately following her on-the-job injuries, claimant was taken by ambulance to St. Vincent's Hospital, where she was treated by Dr. Williams. X-rays taken at that time showed "no fracture or other significant abnormality." Dr. Williams diagnosed her condition as being "multiple contusions of the body, especially of the left orbit and left side of the face, and

of the left knee." She was released from the hospital the same day.

Because of claimant's severe headaches, Dr. Williams referred her to Dr. Zivin, a neurologist, who concluded:

"The patient's symptoms are entirely compatible with soft tissue injury of this type. I have checked her X-rays at St. Vincent Hospital and they indeed failed to reveal any fracture, although one could easily miss a small fracture among the facial bones on X-ray."

He went on to state that claimant was advised that her headaches "were benign" and that they were not associated with any apparent intracranial problems. He noted in his report that he had advised claimant that if her headaches did not resolve themselves, or if some question existed, he would be happy to reevaluate her and recommend further tests if necessary.

Claimant last saw Dr. Williams in the latter part of September, 1976, and at that time he released her to a "modified employment" as of September 23. Dr. Williams told claimant that her headaches would eventually resolve in time, and on October 5, 1976, she went to work for a new employer, where she has worked ever since. From that time until the hearing on October 10, 1977, claimant said she missed five days of work because of headaches, and had to leave work early on several occasions. She also claims that her left knee hurts and becomes numb when she is forced to stand on a hard surface for a long time and that her left shoulder is now stiff and grates in rotation. Notwithstanding these complaints, she has not consulted either Dr. Williams or Dr. Zivin, and there is no medical evidence that any of the conditions complained of is permanent.

The referee found claimant's testimony credible, and we accept that evaluation. However, the referee denied her claim for permanent disability because of the lack of medical evidence of permanency. The Board affirmed.

■ Even accepting claimant's testimony with respect to her symptoms, there is no medical evidence in the record to support a claim that the injuries, or the symptoms, are permanent. Both the treating doctor and the neurologist indicated that the headaches would resolve themselves in time and therefore did not represent a permanent disability. There is no medical evidence that her other injuries were anything more than temporarily disabling. Accordingly, we affirm the Board.

Affirmed in part; reversed in part.

**BUTTLER, J.,** dissenting in part.

I dissent from that part of the majority opinion which reverses the Board's order from which SAIF appeals. The policy question as to whether the purposes of the Act are more likely to be furthered by declining to permit a noncomplying employer to set-off against temporary total disability payments all sums the employer paid the injured employee prior to a determination order is well within the legislative rulemaking power of the Board, ORS 656.726 (2) and (5), and even though we exercise *de novo* review (ORS 656.298(6)), we should not disturb such a policy judgment unless we can say that it is clearly wrong.

There are valid, rational bases for the Board's order, which not only lead me to conclude that the Board is not clearly wrong, but that its policy decision is better than the one put forth by the majority. The choice is between benefitting an injured worker of a noncomplying employer or benefitting the errant employer.

The policy adopted by the majority would permit a noncomplying employer to lull an injured worker into a false sense of security and deceive the worker into failing to file a claim under the Act. A noncomplying employer does not post the required notice advising

[573]

the workers about benefits under the Act, including medical care, permanent disability awards, rights in the event of aggravation of the injury, etc., in addition to time loss benefits. To allow a noncomplying employer, when and if caught in a noncomplying status, to set off payments made to the injured worker as time loss payments under the Act might have a tendency to cause employers to take their chances in not complying with the Act. The fact that the noncomplying employer is subject to civil liability to its injured worker (ORS 656.020; 656.578) does not relieve the employer from paying the benefits otherwise provided in the Act until damages are recovered in a civil action. Those liabilities are strong incentives for a noncomplying employer to attempt to make the injured worker think the employer is being a good samaritan by making payments to him or her voluntarily, and hope the worker will neglect to assert any claims against the employer.

A better rule would seem to be one which encouraged an employer to comply, but even if not complying, to advise an injured worker to file a claim under the Act immediately. If this were done, there would be no occasion for the noncomplying employer to be in the position of this employer. Even if the employer in good faith desired to help the injured employee pending time loss payments under the Act, there is no reason why the employer could not loan money to the worker. But to permit the employer to pay money to the injured worker in the hopes of avoiding any claims or lawsuits does not seem a desirable policy.

In balance, therefore, I would hold that claimant is entitled to temporary total disability payments for the period from May 12, 1976, to July 15, 1976. That rule, adopted by the Board, is not intended to be a penalty on the noncomplying employer. Penalties are specifically provided for in ORS 656.735. Rather, its function is to eliminate any incentive to an employer to fail to comply with the Act. It is not a penalty because the employer is left simply where he put himself. Further,

he may avoid whatever adverse consequences that might result by:

    (a)   advising the injured worker to file a claim immediately;

    (b)   not paying the worker money, or

    (c)   loaning money, if necessary.

The penalties and attorney's fees assessed and allowed by the Board are more problematical. However, SAIF's refusal to make the time loss payments following the determination order that it do so, and without requesting a hearing to contest that determination, constitutes an unreasonable refusal to pay compensation, thereby subjecting SAIF to the penalty provisions of ORS 656.262(8), plus attorney's fees which may be assessed under ORS 656.382. The Board was justified in assessing both in this case.

Accordingly, I would affirm. Therefore, I respectfully dissent.