Argued and submitted March 21, order on 1981 claim reversed and remanded and order on 1980 claim affirmed

In the Matter of the Compensation of
William S. Gilbert, Claimant.

GILBERT,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(81-05084; 79-05397;
A25327 (Control); A25360)
(Cases Consolidated)

663 P2d 807

Martin J. McKeown, Eugene, argued the cause for petitioner. On the brief was Allan H. Coons, Eugene.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Claimant seeks review of two Workers' Compensation Board (Board) orders affirming referees' conclusions that claimant was not entitled to compensation for aggravation of a compensable injury. On *de novo* review, we find that claimant has shown by a preponderance of the evidence that his condition worsened after the most recent arrangement of compensation and that his worsened condition resulted from his industrial injury. We therefore reverse and remand to the Board for reconsideration of one of the aggravation claims.

On September 21, 1977, claimant was injured in the course of his employment as a mechanic with the City of Roseburg. The following day, he visited Dr. Michalek's office, where he described the accident and complained of pain in his shoulder, his neck and the lower part of his chest. He was hospitalized for six days and then returned to work on October 5, 1977. After three or four days of work he quit his job, claiming that severe pain made him unable to work. Over the next three and a half years claimant visited numerous doctors, seeking treatment of his continuing symptoms and medical substantiation for his workers' compensation claims.

In November, 1978, the Workers' Compensation Department issued a determination order awarding claimant time loss for parts of 1977 and 1978, but no permanent partial disability. Also in November, SAIF denied responsibility for certain psychological problems that claimant attributed to the 1977 accident. Claimant filed an appeal from both actions and, on May 15, 1979, a referee entered a stipulated order stating that:

"[1] * * * Claimant is presently awarded * * * 10% or 32 degrees of permanent partial disability of the neck and upper back [, and]

"[2] * * * It is hereby determined that a bona fide dispute exists between the State Accident Insurance Fund and the claimant as to the compensability of the anxiety reaction claimed by the claimant. Claimant shall be paid the sum of $1,500.00 on a disputed claim basis settlement of this matter.

"* * * * *"

A second determination order, issued in 1980, awarded additional time loss but no additional permanent partial disability.

In December, 1980, claimant filed an aggravation claim that SAIF denied (the 1980 claim). A referee affirmed SAIF's denial and, on review, the Board affirmed the order of the referee. In March, 1981, claimant filed another aggravation claim (the 1981 claim). SAIF again denied the claim, a referee affirmed the denial, and the Board affirmed the referee's order.

In each instance, the referee upheld SAIF's denial because, in the referee's view, claimant had failed to prove (1) that his condition had worsened since the last arrangement of compensation and (2) that his condition in 1980 and 1981 was the result of his 1977 injury.

On review, the Board held, with respect to the 1980 claim, that claimant had failed to establish causation and that it was unnecessary to decide whether he had proved a change in his condition. With respect to the 1981 claim, the Board agreed with the referee that claimant had failed to establish both causation and aggravation. Claimant seeks review of both orders. All of the issues presented by the 1980 claim are also present in the 1981 claim; the two review proceedings have therefore been consolidated.[1] We address the questions of aggravation and causation separately.

In order to establish an aggravation claim, a claimant must demonstrate by a preponderance of the evidence that a compensable condition has worsened since the last award or arrangement of compensation. ORS 656.273(1). In this case, the last arrangement of compensation was the stipulated order, entered on May 15, 1979, that awarded claimant 10 percent of the maximum amount for permanent partial disability. At the time the order was entered, claimant had been examined by at least eight doctors. Their diagnoses and impressions fell into two categories: physical problems and psychological problems.[2] Of the doctors who found organic sources for

---

[1] Both the 1980 and 1981 claims raised issues in addition to the aggravation issues. In each case, claimant waived the additional issues in oral argument before this court.

[2] The diagnoses were:

(1) "strain, * * * subperitoneal hemorrhage." (Dr. Michalek, September, 1977);

(2) "acute, post-traumatic severe cervical sprain with myositis, muscle spasm, and radiculitis radiating the trajectory of the right brachial plexus." (Dr. Shelton, December, 1978);

claimant's pain, some recommended conservative treatment and others recommended no medical treatment at all. It is evident that as of May, 1979, claimant's physical difficulties appeared to be relatively minor—not severe enough to warrant additional testing and certainly not serious enough to require surgery.

By contrast, when Dr. Smith began to treat claimant in 1981, his initial examination and his review of prior doctors' reports and x-rays led him to conclude that

> "* * * [t]he patient's condition is not satisfactory nor stationary insofar as he has had no relief of symptoms over the past several years and in fact is *probably physically and psychologically worsening.*" (Emphasis supplied.)

Dr. Smith then had claimant admitted to the hospital for a series of tests that revealed significant physical bases for claimant's complaints.[3] Based on the test results, Smith diag-

---

(3) "pancreatitis, acute * * * prostatitus subacute." (Dr. Michalek, September, 1977);

(4) conversion hysteria. (Dr. Streitz, February, 1978);

(5) anxiety reaction secondary to injury; passive aggressive personality disorder. (Dr. Brown, April, 1978);

(6) "The * * * pain in his neck * * * seems out of proportion to the duration of the mechanism of injury. * * * I presume a soft disc protrusion could be giving this type of clinical picture * * *." (Dr. Byck, June, 1978);

(7) "[1] hysterical or conversion reaction; [2] cervical scapular strain syndrome. * * * I do not feel at present that orthopedic treatment is indicated * * * The patient has been on disability for a prolonged period and out of keeping with his symptoms and findings." (Dr. Streitz, August, 1978);

(8) "cervical strain * * *, cephalgia, * * *, functional overlay * * *. We do not feel that there is orthopaedic disability and feel that most likely treatment should be from a psychological and psychiatric standpoint." (Orthopaedic Consultants, October, 1978);

(9) "* * * There is no neurological condition to render a disposition of disability." (Dr. Schostal, November, 1978);

(10) "It is my impression that [claimant] is probably suffering from a chronic low back strain as well as vascular muscle contraction headaches. * * * One must also consider the possibility that [claimant] is somewhat more adept at manipulating physicians than other patients [are]." (Dr. Norris-Pearce, November, 1978).

[3] X-rays revealed nerve root encroachment at the C5-6 level and "spondylotic changes with narrowing anterior spur formation at C5-6." A discogram showed disc fragmentation, and a myelogram revealed bilateral root encroachment at the C5-6 level.

nosed "cervical spondylosis with a ruptured and fragmented intervertebral disc and * * * nerve root compression at C5-6." He recommended surgery and, on July 1, 1981, performed an anterior discectomy and posterior bilateral decompression of C5-6. He described his findings as follows:

> "* * * [T]he disc [was] removed piecemeal with * * * forceps. The disc space was extremely narrowed, sclerotic and the disc remnants were markedly degenerated fragments. There was considerable anterior spurring as well as * * * definite posterior spurring. * * *"

In a post-surgery report, the doctor reported that:

> "* * * cervical spondylosis with nerve root compression and encroachment [w]as the cause of [claimant's] intractable pain problems."

In short, in 1981, Dr. Smith found claimant's condition serious enough to warrant surgery, and he found that his physical difficulties were serious enough to cause "intractable" pain. These medical findings, which were confirmed by surgery, are in marked contrast to the findings of the doctors who examined claimant prior to the 1979 award. We therefore conclude that he has demonstrated, by a preponderance of the evidence, that his condition had worsened since the award entered on May 15, 1979.

The Board held that claimant "failed to prove a causal relationship between his neck and shoulder condition, as it existed in 1981, and the 1977 industrial injury." We disagree. Here, claimant, who had no previous neck, back or shoulder problems, experienced an industrial accident that caused immediate pain in his neck and shoulder. He went to a doctor the next day complaining of neck, shoulder and chest pain, and he experienced neck and shoulder pain continuously until his surgery in July, 1981. Because these circumstances all indicate that claimant's 1981 condition resulted from the 1977 compensable injury and because the record contains nothing to suggest an alternative cause for his complaints, we find that claimant has demonstrated by a preponderance of evidence a causal relationship between his compensable injury and his condition in 1981. *Cf. Uris v. Compensation Department,* 247 Or 420, 427 P2d 753 (1967).

Our view rests in significant measure on the opinion of Dr. Smith, who believed that claimant's 1977 accident

either caused claimant's spondylosis or aggravated a mild pre-existing spondylosis. While it is true that the force of his opinion is somewhat diminished because it rests heavily on claimant's unreliable description of the 1977 injury, *Miller v. Granite Construction Co.*, 28 Or App 473, 476, 559 P2d 944 (1977), SAIF has not offered an alternative explanation for the cause of claimant's 1981 condition.

The Board's order on the 1981 claim is reversed and remanded for further proceedings consistent with this opinion. The petitioner did not have the benefit of Dr. Smith's testimony in the 1980 proceeding. The Board's order on the 1980 claim is affirmed.