RICHARDSON, J.
The State Accident Insurance Fund (SAIF) appeals from an order of the circuit court requiring it to provide further medical treatment in the form of psychiatric services to claimant. Claimant suffered a hip and back injury from a fall in January 1972. A determination order awarded him permanent partial disability of 32 degrees for an unscheduled low back disability and 13.5 degrees for partial loss of the function of his right foot. Claimant appealed this determination order seeking increased compensation for low back pain. The referee awarded compensation equal to 80 degrees for the unscheduled permanent partial disability. In this proceeding claimant requested additional compensation on the grounds that his original low back injury had been aggravated and that he needed further psychiatric treatment because of the injury.
This case does not involve the extent of claimant’s physical disability, that issue was decided by the referee’s order following the hearing on the original determination order. This case also does not involve claimant’s contention that his physical condition has been aggravated since that order, or that he needs further medical treatment for his physical condition. In this proceeding the referee, the Workers’ Compensation Board and the circuit court all determined that claimant had not established an aggravation claim or the need for further medical services for his physical condition. Claimant does not appeal these determinations. The only issue remaining is whether claimant has proven that any current need for psychiatric treatment is attributable to his 1972 industrial injury.
Following the injury in January 1972, and shortly thereafter, claimant complained of a loss of memory, pain in his left shoulder, sternum, low back, right buttock, and left frontal area. Several of these symptoms disappeared, but claimant continued to be bothered by pain in his low back and legs. In February *[316] 1972, he underwent a laminectomy, and his symptoms improved for a short time thereafter. However, in May 1972, claimant began to suffer pain again, and began an extensive series of examinations by doctors. A psychological evaluation of claimant in July 1972, indicated that:
"* * * Personalitywise, there is abundant evidence of a personality trait disturbance with a history of instability. As a result of this injury he is experiencing an anxiety tension reaction coupled with some focus on physical complaints. * * * The patient probably is feeling some genuine physical discomfort and this, coupled with the patterns of psychopathology which preexisted the injury, is hindering the restoration and rehabilitation process.”
The report of the Back Evaluation Clinic in July 1972, stated that due to a "marked functional overlay” it was nearly impossible to determine whether there existed any organic cause for claimant’s complaints.
Pursuant to a recommendation, claimant began psychological counseling sessions in the summer of 1972, but these terminated shortly thereafter because of lack of progress. The determination order followed.
In January 1973, claimant saw a Dr. Hockey, who concluded:
"* * * The patient certainly has considerable functional overlay regarding his problem, but one must suspect that he probably does have some organic basis for the complaints as well.”
In March 1973, claimant began treatment at the Portland Pain Rehabilitation Center. By April 1973, claimant had made some progress towards rehabilitation in stopping all forms of pain medication, improving his gait and decreasing his use of crutches. His physician at the Pain Rehabilitation Center, Dr. Seres, stated:
"On further questioning with the patient, it became evident that the patient was quite dissatisfied with the * * * partial disability he had received in the past referrable to his low back. He was anxious to start his *[317] own business and in this area needed additional funds. He stated further that he had seen some people who had more disability rating with less symptoms than he. * *
At the hearing on appeal of the determination order, claimant complained that his legs at times would collapse without apparent cause and that he suffered low back pain, headaches, violent uncontrollable nerve spasms and discomfort upon extended standing or sitting. The hearings officer awarded additional compensation equal to 80 degrees for an unscheduled permanent partial disability.
Since 1974, claimant has twice visited Dr. Holland, a psychiatrist, the last visit occurring in July 1975. Dr. Holland concluded that claimant no longer suffered from an anxiety tension reaction to the injury, and that:
"I do not believe that this is an example of malingering, but rather the result of an unconscious mental process seeking some security and dependency gratification. I feel that [claimant’s] interaction with other disabled workmen was the stimulus which precipitated his present mental set and goal of obtaining 100% permanent and total disability. This goal is certainly a conscious motivation. I feel that his symptoms and their intensification represent a by-product of this conscious motivation.”
In September 1975, in response to questions by claimant’s attorney, Dr. Holland stated:
"[Claimant] then becomes consciously aware of what the system will provide by his exposure to other disabled workmen, and in the context of this history, his symptoms begin to worsen. The reality of his world has afforded an alternative, and he is now continuing to pursue this alternative, namely, 100% total, permanent disability. * * *
"* * * I can only say that he has a conscious need to be sick, to have symptoms, and to experience them as disabling, but I am not prepared to say that he is falsifying symptoms.”
Following a hearing in the proceeding which is the *[318] basis of this appeal the referee found that claimant’s physical condition had not been aggravated, and in holding that claimant had not proven that his need for psychiatric treatment was caused by the injury, noted:
"While several of the medical doctors recommended psychological counseling because of claimant’s functional overlay, none of these doctors were psychiatrists. In complicated medical situations such as here, only medical evidence can determine their cause, * * * and greater reliance must be placed on the evidence of the psychiatrist, Dr. Holland. Dr. Holland specifically focused his attention to any intensification of the psychiatric condition which was noted * * * in July, 1972, namely, a moderate anxiety tension reaction, and he addressed the question as to whether or not there had been any intensification of these symptoms since January 1974.
"The evidence indicates that claimant’s present symptoms and their intensifications do not flow from his industrial injury, but are caused by an intervening conscious motivation to obtain a permanent and total disability status.”
The Board adopted the referee’s opinion, and the circuit court affirmed the Board’s order as to the physical aggravation claim, but held that claimant was entitled to psychiatric treatment. Claimant has not appealed from the court’s denial of his aggravation claim.
In order to prevail, claimant must meet the burden of proving by a preponderance of the evidence that his need for psychiatric services was caused by his injury. McKinney v. SAIF, 22 Or App 602, 540 P2d 393 (1975); Friesen v. Gould, Inc., 18 Or App 120, 523 P2d 1285 (1974). In complicated medical situations such as that presented here, only expert evidence can determine the causal relationship between the industrial injury and the psychiatric problems. Marston v. Compensation Department, 252 Or 640, 452 P2d 311 (1969); Hart v. SAIF, 31 Or App 181, 570 P2d 92 (1977). We agree with the referee’s analysis of the medical evidence and likewise conclude claimant has failed to establish his *[319] need for psychiatric treatment is attributable to his industrial injury.
Reversed.