Argued and submitted October 18, 1993, affirmed September 7, 1994

In the Matter of the Compensation of
John M. Freeman, Claimant.

## SAIF CORPORATION
and S F & D Corporation,
*Petitioners,*

*v.*

## John M. FREEMAN,
*Respondent.*

(WCB 91-10314; CA A76774)

880 P2d 942

·David L. Runner, Assistant Attorney General, argued the cause for petitioner. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Charles Robinowitz argued the cause and filed the brief for respondent.

Before Deits, Presiding Judge, and Riggs and Haselton,* Judges.

DEITS, P. J.

---

* Haselton, J., *vice* Durham, J.

## DEITS, P. J.

Employer seeks review of an order of the Workers' Compensation Board (Board) setting aside its denial of claimant's current psychological condition. We affirm.

Claimant, who was 53 years old at the time of hearing, was a construction worker who compensably injured his back in May, 1988. As a result of the injury, he was not able to continue to do construction work. Claimant had experienced personality problems before he injured his back; however, he had never sought or received treatment for those problems. In October, 1988, he began seeing Dr. Grass, a psychiatrist. Grass diagnosed depression and prescribed medication and psychotherapy. The treatments were paid for by employer as part of claimant's accepted claim. In April, 1989, the parties stipulated to an award to claimant of 14 percent unscheduled permanent partial disability. In September, 1989, the award was increased to 30 percent. Claimant continued treatment with Grass. In April, 1990, it was Grass's opinion that claimant's psychiatric condition had deteriorated since the determination order was issued and that his claim should be reopened. At employer's request, claimant was examined by psychiatrists in May, 1990, and February, 1991.

In June, 1991, employer issued a denial of claimant's then current psychological condition on the basis that claimant's accepted injury was no longer the major contributing cause of the condition. Claimant requested a hearing on employer's denial and, after the hearing, the referee set aside the denial, concluding that the compensable injury remained the major contributing cause of claimant's current psychological condition. The Board agreed.

Employer seeks review of the Board's order, arguing that it erred in concluding that claimant's compensable injury remained the major contributing cause of claimant's psychological condition. Employer asserts that not only was the Board's legal conclusion wrong, the order was also deficient because the Board failed to adequately explain its conclusion.

It is employer's position that the deterioration of claimant's psychological condition was not caused in major part by his compensable injury, but was caused by claimant's

"conscious desire for additional workers' compensation bene-fits." Employer characterizes this type of causation as "sec-ondary gains." It describes a "secondary gain" as "an intervening cause that breaks the causal chain between the industrial injury and the psychological condition." Employer contends, relying on our decisions in *Middleton v. SAIF*, 31 Or App 313, 570 P2d 406 (1977), and *Burks v. Western Irrigation*, 36 Or App 587, 586 P2d 788 (1978), that "second-ary gains" from an injury cannot result in a compensable condition. It asserts that in those cases, we held that a psychological condition is not a compensable consequence of an injury if it is "caused" by the injury only in the sense that it reflects a conscious or unconscious desire for secondary gains from the injury.

Employer's reading of our holdings in *Middleton* and *Burks* is correct. The circumstances in those cases, however, are distinguishable from those here because, there, the Board found that there was no causal link between the claimant's psychological problems and the compensable condition. In *Middleton v. SAIF, supra*, 31 Or App at 318, for example, the Board found that " 'claimant's present symptoms and their intensifications do not flow from his industrial injury, but are caused by an intervening conscious motivation to obtain a permanent and total disability status.' " In contrast, here, the referee and the Board found that there was a sufficient link between the compensable injury and claimant's present psy-chological condition. The referee explained her conclusion:

"Dr. Grass explained that claimant became depressed and lost his self esteem and confidence when his ability to produce or work was diminished. I am persuaded that claim-ant's injury remains the major contributing cause of his current psychological condition. I give greater weight to the opinion of Dr. Grass, claimant's treating psychiatrist, who has treated claimant over a lengthy period of time than to the opinion of Dr. Turco, who only had the opportunity for a brief one-time examination of claimant."

Employer argues that the Board's conclusion was legal error because, in its view, the evidence could only result in the conclusion that claimant's psychological problems were caused by his motivation to obtain more workers' com-pensation benefits, and that, as a matter of law, cannot support a conclusion that the compensable injury remained

the major contributing cause of those problems. Employer particularly criticizes the Board's reading of the testimony of claimant's treating physician, Grass, which it contends may only be read to support the conclusion that claimant's psychological problems were caused by his desire for more benefits.

Although employer characterizes its argument as one of legal error, in essence it is arguing that there is no evidence to support the Board's conclusion that there was a sufficient link between claimant's injury and his psychological condition. We conclude that there was evidence to support the Board's conclusion that claimant's compensable injury remained the major contributing cause of his condition and that the Board adequately explained its conclusion.

Grass, who was claimant's treating physician, treated claimant at least 36 times between July, 1989, and September, 1991. He testified that he saw claimant for approximately 150 to 200 hours during that time. Although he testified that claimant was upset because he wanted more workers' compensation benefits, Grass also explained why he thought that the pain that resulted from the compensable injury and claimant's inability to return to work were major causes of his depression:

"Q. How important was his ability to work in construction in maintaining and building his self-confidence in life?

"A. Well, I think it was one of the principal elements in his personality structure. It was what he knew how to do. He was successful at it. It was part of his male identity, and it was what he had seen himself doing for most of his working career, and it was where he knew how to contribute to his family."

Grass further stated:

"He had a lot of pain, and he'd been evaluated by orthopedists and neurosurgeons and basically said, well, you have injury in your back, but there's nothing we can do to fix it, and you're going to have to learn how to live with this pain. You know, that was very difficult for him. He couldn't go back to work, couldn't do what he knew how to do, and there was no real solution to his injuries, and he was scared that he might not be able to support himself.

"* * * * *

"[Claimant has] been moderately to severely depressed for three years. He hasn't been able to feel secure about whether

he can survive, support himself. The elements that led to that depression have to do with what happened to him in '88. He can't support himself, so he is dependent on this organization, SAIF, to help him with that. He's not a man that feels comfortable with dependency, never has been. That's not his work ethic. That's not his personality. I don't think he likes being enmeshed with this organization any better than any of the rest of us would, but he had to depend on them. He had no other way to earn a living, to support himself. So when that gets jeopardized, yes, that would aggravate his depression. I think it would any of us. We'd get frightened if we didn't know if we could support ourselves. I don't see it as unreasonable."

We hold that the Board did not err in concluding that claimant's injury remained the major contributing cause of his psychological condition.

Affirmed.