Argued and submitted June 29, reversed September 26, 1984

In the Matter of the Compensation
of Fred Chatfield, Claimant.

CHATFIELD,
*Petitioner,*

*v.*

SAIF CORPORATION,
*Respondent.*

(WCB No. 82-03927; CA A30331)

688 P2d 434

Kathryn H. Clarke, Portland, argued the cause for petitioner. On the brief was Peter O. Hasen, Portland.

Donna Parton Garaventa, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Claimant appeals an order of the Workers' Compensation Board that reversed the referee and held that claimant had failed to prove that the worsening of the symptoms of his preexisting psychological condition was related to the compensable injury. We reverse.

On August 21, 1981, claimant was employed as a truck driver and was involved in an accident that resulted in his immediate admission to the hospital. He was treated for multiple abrasions, lacerations to his right knee, left hand and left eyelid and a possible head injury. He was discharged on August 25, 1981. Initially, his chief complaint was of locking in his right knee. He returned to work one month after the accident but could only work two weeks, because his knee would lock and become painful. In November, 1981, claimant underwent arthroscopy on his knee. At the time of the hearing, his knee would still lock and go numb, so he was not able to drive a truck. In April, 1982, Dr. Kim diagnosed right tempormandibular joint (jaw) dislocation, relating the condition to the compensable truck accident. Bilateral arthroplasties were performed on his right knee in June, 1982. Both the knee and the jaw condition were accepted as compensable.

Claimant became unhappy with the treatment given him by his treating physician and in December, 1981, went to see Dr. Kim for a second opinion. Dr. Kim noted that claimant had depression secondary to his on-the-job accident and felt that he might be a suicide risk. On February 25, 1982, the doctor stated: "He is, in my opinion, not able to work for psychiatric reasons, let alone his knee pain now." After receiving that opinion, SAIF sent claimant to Dr. Colistro, a psychologist. Thereafter, claimant was seen by Mary Lansing, a counselor, Dr. Zigrang, a clinical psychologist, and Dr. Turco, a psychologist. Although they place different diagnostic names on claimant's mental disease, all concur that claimant has a serious psychological disability. All except Dr. Turco believe that he is disabled by his psychological problems. The issue therefore is whether his preexisting psychological condition was worsened by his industrial accident.

Claimant's psychological history consists of such a long series of traumatic events that, as noted by the referee: "It is not surprising that he has an underlying psychiatric

condition that is subject to episodic aggravation." As a child, he was subjected to severe physical abuse. According to claimant, out of all of the children in the family, he was the only one that was so abused. He ran away from home at the age of 14 and was placed in the Vancouver Boys Academy. At 15, he was informally adopted by friends of the family. At 17, he dropped out of high school, having only completed the ninth grade, and joined the army. On his eighteenth birthday he received orders to go to Vietnam. Psychological testing revealed that claimant's experience there was at the highest stress level possible. While in Vietnam, claimant became addicted to several drugs. He was shipped to Germany, where he continued to have a drug problem and was eventually put in a detoxification center. The treatment was not successful. He went AWOL and was eventually discharged from the army. He returned to Washington, still having his drug use problem, and stole some property to support his habit. He was turned into the police by his parents and convicted on three counts of burglary. He served two years in prison, during which he attempted suicide once. After getting out of prison, he stayed off drugs but continued to have an unstable lifestyle for five or six years.

Beginning in 1979, claimant's life began to stabilize. He completed, with merit, a truck driver training course and was immediately employed. Although he quit his first job after ten months, and his second after five months, he always obtained another job and was never unemployed for long. According to his 801 form, he had been on the job for approximately six months at the time of the injury. During that period of time, he had also had a continuing relationship with a woman with whom he lived and by whom he had a child. He was actively involved in community work and was on the board of the North Community Action Council, where he was extremely helpful organizing, revising and spearheading programs. Thus, it appears that any psychological difficulties that claimant had were basically asymptomatic from 1979 until the time of the injury.

While claimant was in the hospital recovering from the injury, his girlfriend left him, accused him of sexually abusing his two-year-old daughter and obtained a restraining order barring him from any contact with her or his daughter. Criminal charges based on that allegation have since been

dropped, but claimant is still under a restraining order barring him from any contact with his daughter.

Since claimant's hospitalization, his memory has decreased, he is more belligerent and he isolates himself in his bedroom, hardly going anywhere, except to work on his car. He cries a lot and does not believe that he is mentally able to work now. He testified: "It just seemed like a chain reaction, just something . . the wreck just triggered something up inside me, you know."

■　In this complex case, in which many different types of trauma intertwine in claimant's psychological makeup, we rely on the opinions of experts to determine whether the psychological condition was worsened by his compensable accident. *See Hart v. SAIF,* 31 Or App 181, 570 P2d 92 (1977). Unfortunately, the medical evidence in this case is not uniform. Four experts agree that claimant's current mental condition is attributable to the accident. Dr. Kim, a general practitioner, who first noted claimant's psychological problems after the injury and who is claimant's treating physician, has stated unequivocally on several occasions that his current state of mind or psychological disability was triggered by the accident. Lansing, a counselor who treated claimant, concluded: "I believe that [claimant's] negative experiences in his military career, his truck accident, and the sexual abuse charge are all contributing factors to his mental status." Dr. Achar, a psychiatrist, saw claimant at the request of Dr. Kim. He concluded:

> "The condition he is suffering from is greatly exacerbated by the accident without a doubt. * * * I have no doubt in my mind what we are seeing now to a large extent is the direct result of the truck accident he was involved in and only a small portion is due to the exacerbation of his personality character traits."

Dr. Zigrang, a clinical psychologist, testified at the hearing. He was with claimant for three hours, administered several tests and had extensive conversations. He also reviewed all of the medical records and stated that at least two of the tests indicated that claimant had sustained some injury to the left hemisphere of his brain. He noted that claimant had been put on 18 different drugs since his injury, a number of which were anti-depressant, anti-anxiety, major or minor

tranquilizers. He concluded that the industrial injury was a major contributing factor to claimant's current mental problems.

Two experts believe that claimant's underlying psychological disability was not worsened by the accident. Dr. Colistro believes that, although claimant suffers from serious mental disturbances, they are not caused or significantly aggravated by the accident. However, his mental problems do make it impossible for him to benefit from medical treatment and vocational rehabilitation. He recommended hospitalization.

Dr. Turco, a psychologist, also testified at the hearing. He saw claimant on one occasion, during the time when claimant's jaws were wired shut because of treatment he was undergoing for the tempormandibular joint dislocation. The doctor concluded that claimant's industrial injury worsened his symptoms but did not worsen his underlying condition. However, it is evident from Dr. Turco's entire opinion that this is a conclusion that he would uniformly make, because he appears to view any increase in symptomatology as merely temporary and not affecting the underlying condition. He does note that claimant's personality disorder lengthens the time that it will take him to get over the injury and that claimant's symptoms are an expression of the mental disease becoming active. Dr. Turco stated that "you know schizophrenia has worsened when you see an increase in the symptomatology."

■■ We agree with the referee that claimant failed to submit adequate evidence either that he has sustained actual physical brain damage or that, if such brain damage is present, it is related to the compensable injury. The only evidence in the record of such brain damage is the testimony of Dr. Zigrang, who has no medical training, and there is no showing that he is competent to testify as to physical brain damage. The fact that several tests given by him indicate possible brain damage may point to the need for further testing, but they do not establish either that such brain damage actually is present or that, if present, it is related to the compensable injury.

■ We conclude that claimant has met his burden of proving that his psychological impairment was worsened by

the compensable accident. Clearly, he had a serious preexisting mental disability but, as noted by the referee:

> "What seems significant is that for a period of almost three years, from 1979 to the time of the accident of August, 1981, claimant's life situation became stable and useful. He became involved in community action groups, completed a truck driving training program and worked fairly consistently at this profession until his accident. This period of stability persuades this trier of fact that events occurring after August, 1981, materially contributed to claimant's worsened emotional condition."

We conclude that claimant's mental condition worsened after the compensable accident. The issue therefore is whether claimant's truck accident contributed to the worsening of his mental condition or whether the worsening of the symptoms after that date is totally attributable to his preexisting condition, aggravated by his girlfriend leaving him, the charges of sexual abuse and the visitation restraint.

■ The preponderance of the medical evidence establishes that both the accident and claimant's personal life were significant contributing factors to his current mental condition. That is the conclusion of the treating physician, Dr. Kim, the counselor, Lansing, the psychologist, Dr. Achar, and the clinical psychiatrist, Dr. Zigrang. Even SAIF's experts, who conclude that claimant's underlying psychological disability was not worsened by the accident, appear to agree that the accident did worsen claimant's symptoms. Dr. Colistro stated that the stresses claimant suffered from the pain resulting from the accident "appear to have caused an intensification of his symptoms." Dr. Turco stated that claimant's industrial injury did worsen the symptoms and that the symptoms are an expression of the disease becoming active.

■ At a minimum, claimant has established that his psychological condition was stable and not requiring treatment before the injury, the injury greatly increased his symptoms and his symptoms now make it much more difficult for him to obtain employment and made treatment necessary. That is sufficient to meet claimant's burden of proving that his psychological condition is compensable. *Hutcheson v. Weyerhaeuser*, 288 Or 51, 602 P2d 268 (1979); *ASC Contractors v. Harr*, 69 Or App 405, 685 P2d 485 (1984); *VonKohlbeck*

*v. SAIF,* 68 Or App 272, 680 P2d 1026 (1984); *Wheeler v. Boise-Cascade,* 66 Or App 620, 675 P2d 499 (1984).

Reversed; referee's order reinstated.